# Richmond.

## HASKIN v. AGRICULTURAL FIRE INSURANCE COMPANY.

### March 13th, 1884.

1. SPECIFIC PERFORMANCE.—Courts of equity will enforce the performance of a contract if it be proved as stated in the bill and, as stated and proved, it be certain, fair, and just in all its parts. But if the evidence be conflicting, and it is not clear that a contract was in fact made, a bill for specific performance will be dismissed.

2. IDEM—*Contracts for insurance.*—Proof of insurance contract may be by parol, but it mnst be full and clear. Proof of a mere offer, on the one hand, without acceptance, on the other, or of an incomplete contract—that is, when anything is left open for future adjustment, either as to the amount of the risk, the premium to be paid, or the duration of the risk—no obligation exists.

3. IDEM—*Idem—Acceptance.*—The fact that an application has been made for insurance and a long time has elapsed and the rejection of the risk has not been signified, does not warrant a presumption of its acceptance. In such cases, there must be actual acceptance or there is no contract.

4. IDEM—*Idem—Solicitors.*—A solicitor is, to some extent, the agent of an insurance company. But where one has notice of solicitor's limited powers—*i. e.*, that he can solicit, not perfect or complete contracts for insurance, and that such solicitor cannot give him the rates, nor do otherwise than report the application to his principal—no binding contract of insurance can be made with such solicitor.

5. IDEM—*Idem—Case at bar.*—P, a solicitor empowered only to solicit risks, and receive and transmit to company applications and premiums for insurance, conversed, December 10th, 1879, with H about insuring H's barn and peanuts ; but no application in writing was then made, H not then having the money to pay the premium, and P made no report to company. Nothing was done till December 23d, 1879, when H and P again met, and H, concealing the fact that the barn and peanuts had been destroyed the day before, made his written application and paid the premiums, and report was then made to company, which, in ignorance that the loss had already occurred, issued the policies and forwarded them to P, with instructions not to deliver them until explanation was made about an engine near the barn. Before explanation, company, informed of the loss, withdrew the policies. On bill by H for specific performance—

HELD :

  1. Whether P had authority to make the contract stated in the bill, or not, such contract was not established by the proof, and the bill was properly dismissed.

Appeal from decree of chancery court of Richmond city, pronounced June 29th, 1880, in a cause wherein A. N. Haskin was complainant, and the Agricultural Fire Insurance Company of Watertown, New York, was defendant, for the specific performance of an alleged contract for the insurance of a barn and peanuts. The cause was heard on bill, answer and depositions and dismissed, with costs to the defendant. From the decree said Haskin obtained an appeal to this court.

Opinion states the facts.

*Friend & Davis*, for the appellant.

*J. B. Young*, for the appellee.

LACY, J., delivered the opinion of the court.

The case is as follows: The appellant claims that on the 10th day of December, 1879, he contracted with the appellee to insure his barn in the county of Sussex, Virginia, together with peanuts stored therein, the risk on both barn and peanuts to commence on that day; that the premium notes were agreed and were to be paid on request; that in consideration of the sum so agreed to be paid, the said company agreed to insure him against loss or damage by fire; that on the 22d of December, the said property so agreed to be insured was totally destroyed by fire without fault on the part of the plaintiff; that the plaintiff then paid the agent of the company the premiums and took his receipt therefor; that the defendant company refused to deliver the policies or to pay his losses. The suit is for

specific performance, that the defendant company may be compelled to pay these losses.

The defendant company, on the other hand, positively denies all the allegations of the plaintiff; denies that it ever made or entered into any contract of insurance with the plaintiff; that it ever promised or agreed with the plaintiff to issue and deliver to him a policy of insurance in conformity with any such alleged agreement.

It avers that one Brooke Pleasants, a solicitor of insurance, without any authority to make contracts or to issue policies of insurance for the said company, saw the plaintiff in the month of November, 1879, in reference to insuring any farm buildings he might have in the said company; that the plaintiff inquired of said solicitor what would be the rate of premium charged by said company on a dwelling and barn, with small engine attached, and stables, in Sussex county. The said solicitor, not knowing himself the rate of said insurance, agreed to write, and did write accordingly to the State agent of the said company in the city of Richmond for information as to such rates, and received from said agent a reply stating the rates at which such property could be insured in said company. The substance of the reply of the State agent as to such rates was communicated by said solicitor to the said plaintiff, and at a subsequent interview between the said solicitor and the said plaintiff, the latter expressed his willingness to have a portion of the property above referred to insured—to-wit: the barn and some peanuts therein—but said that he had no money then to pay the insurance premium thereon. The said solicitor, not being able to give the complainant information as to the legal effect upon the validity of an insurance, if there was a failure to prepay the premiums, the matter was for the time dropped or suspended. No application for insurance was then prepared or transmitted by said solicitor to the State agent in Richmond on behalf

of the complainant, nor did the State agent know, until after the property in question had been burned, that the complainant was the person in whose behalf said enquiries as to rates had been made.

Thus the matter rested until the barn and the peanuts had been totally consumed by fire on the night of the 22d of December, 1879. The complainant learned of the fire in the forenoon of December, 23d, the next day, and forthwith commenced looking for the said solicitor, the residence of both being in or near the city of Petersburg, with the object of attempting to avail himself of what had passed between them previously, for the purpose of perfecting a policy of insurance on the property already destroyed by fire, before the fact of the destruction of the property by fire had become known to the said solicitor or to the State agent of said company at Richmond. The complainant having found the solicitor on that day, stated to him that he had now obtained the money necessary to pay the premium of said insurance on said property and desired to obtain a policy or policies therefor.

The said solicitor then made the usual memorandum for an application on behalf of the complainant for the issuing of a policy or policies on the property to be insured, and forwarded the application to the State agent at Richmond, with the request, at the instance and request of the plaintiff, that the policies should relate back to the 10th day of December, 1879, which said plaintiff said was the date of the last interview between him and the said solicitor.

The policies were made out and forwarded to the solicitor, with directions not to deliver them until further information was had as to the location of the steam engine attached to the barn. The policies were rejected by the plaintiff because of the statement contained therein that there was no encumbrance on the property, and were re-

turned.   The policies, at the request of the plaintiff, were returned by the solicitor to the State agent for correction. The solicitor then learned from the plaintiff that the property had been destroyed by fire.   The solicitor returned the policies to the State agent at Richmond, with the information that before the application was made, and before the premium was paid, the property had been totally destroyed by fire; whereupon, the said State agent at Richmond retained the policies, and refused to deliver them. And that there never was any contract made for the insurance of his property which was binding on either the plaintiff or the defendant company while the said property was in existence.

Testimony was taken in the cause on both sides, and upon the hearing, on the 29th day of June, 1880, the chancery court dismissed the bill of the plaintiff.   From this decree, on the 2d day of May, 1882, the appellant applied for and obtained an appeal to this court.

In this case, the answer of the corporation, under its common seal, puts in issue all the allegations of the bill of the of the plaintiff, and the burden of proving them is upon the plaintiff.   The uncontradicted result of the evidence on both sides is, that there was no application sent in to the company, nor given to the solicitor, until the insurable subject had ceased to exist.   Nor was any part of the premium paid to the solicitor until the total destruction by fire of the entire insurable subject.   Upon this part of the evidence there is no conflict.   The fire occurred and destroyed the property on the 22d day of December.   The application was made on the following day, and the money paid that day in part on the premium.   The applicant knew at the time this was done, that he had nothing to insure.   The other side was without any such information. It was withheld from him by the other party, who says he regarded it to his interest to so withhold it.   The two con-

tracting parties, on that day, did not stand upon equal terms; and if there had been a contract made solely on that day for insurance of property not in existence at the time, it will be admitted that such contract was of no effect. To make it, on one side, would have been a gross actual fraud, and to enforce it would be an act of gross injustice. So that whatever binding contract exists between the parties, must have been made between the parties before the destruction of the property insured. If this binding contract—that is, binding on both sides, by which each was bound and which either could enforce against the other—had existed before the fire occurred and before the policies were issued, then the plaintiff would be entitled (as indeed would be the defendant) to enforce the same, whether there had been any transactions between the contracting parties after the fire or not; and upon this ground it has been properly held that the plaintiff, under such circumstances, having already a binding contract of insurance executed, or which either party could cause to be executed by the other, was under no obligations, either legal or moral, to give any information to the insurance company of the fire when applying for the policy for which he had paid or which, by his contract, he was entitled to receive. The plaintiff claims that on the 10th of December, some days before the fire occurred, when applied to to make this contract, he said to this solicitor: "If he was disposed to take the risk of the barn and peanuts he would be pleased to have him do so"; stating at the time that he had no funds with him at *present* and would pay him soon for the policies, and asked him if that would make any difference, to which he replied "none"; and then asked the solicitor if he might consider the property insured from that date, and the solicitor said "yes." On the other hand, the solicitor says that he did not make any contract on the first interview;

that he replied that he did not know the rates, and so would write and inquire; that he told him to let him know through the postoffice when he heard, and he did let him know on the 29th of November following; that he afterwards met him on the street, and the plaintiff said he had other business to attend to when asked about the matter, but would attend to it in a few days; that the next time he saw him he met him on the porch of his house, and when asked about it, plaintiff said he would like to insure the barn and peanuts, and he made a memorandum on a piece of paper of the amount and some description of the property.

The plaintiff then said that he had no money and could not pay the premium, and asked him what effect that would have; that he told him that he did not know; that he had had property insured and paid the premium at the end of the month, but never had a fire to occur, and if it had, he did not know whether he would have got the insurance or not. That the plaintiff then said if a fire should occur, he would hasten down to pay the premium; and he asked solicitor how that would be; solicitor replied that he hoped nothing of that kind would occur; that on the 23d of December following he met plaintiff, who told him he had just been paid some money and was ready to pay the premium, "and asked me if I had the policies with me." Solicitor promised to send for policies, and plaintiff then asked for the amount of the premiums, and paid the same, and before he received the policies. Why did the plaintiff then pay the amount of these premiums before the policies were delivered to him? Was it because the property in question had been totally destroyed by fire on the day before? For the first time in all the negotiations, we find the plaintiff seeking the solicitor to pay. Heretofore he had put the solicitor off with the familiar saying, " I have no money at this time." Was this change, on his part, because the fire had occurred the night before? He

said not to solicitor that his property had been burnt up, but he explains his change of deportment by remarking that he had just been paid some money. This is a suit for the specific performance of his alleged contract. A court will enforce the performance of a contract; but the plaintiff must establish the contract and prove it, as stated in the bill, and the contract must be certain, fair and just in all its parts. *McComas* v. *Earley,* 21 Gratt. 33; *Stearns* v. *Beckham,* 31 Gratt. 379.

If the evidence is conflicting, and it is not clear that a contract was in fact made, a bill for specific performance will be dismissed. *Snydam* v. *Columbus Ins. Co.,* 18 Ohio, 459; *Dinning* v. *Phœnix Ins. Co.,* 68 Ill. 414. The proof of the contract may be by parol, but it must be full and clear. And proof of a mere offer on the one hand, without acceptance on the other, or of an incomplete contract—that is, where anything is left open for future adjustment, either as to the amount of the risk, the premium to be paid, or the duration of the risk—no contract or obligation exists. *N. E. Fire and Marine Ins. Co.* v. *Robinson,* 25 Ind. The fact that an application has been made for insurance, and a long time has elapsed, and the rejection of the risk has not been signified, does not warrant a presumption of its acceptance. In such cases there must be an actual acceptance, or there is no contract.

The statement of the plaintiff that he made the agreement or contract on the 10th of December, receives some confirmation from the fact that when the money for the premium was paid on the day after the fire, the plaintiff knowing and the solicitor not knowing of the fire, the receipt then given by the solicitor was dated the 10th of December, although written on the 23d of December. The statement of the solicitor, on the other hand, is corroborated by the circumstance that he, the said solicitor, did not forward any application, nor did he write for the policies after the conversation. He had appeared anxious to

affect the insurance, and if he had done so it appears reasonable that he would have taken the next step and obtained the policies, if the contract had been made on the 10th of December. Why did the plaintiff ask the solicitor on the 23d what was the amount of the premiums?

A calculation then had to be made. Upon a comparison of the statements, it seems that the solicitor is sustained by the circumstances in his statement, and it appears that the plaintiff has failed to make out a contract so clear and so certain as to authorize the court to decree its specific enforcement. The solicitor was undoubtedly, to some extent, the agent of the company; but the evidence shows that at the outset of the negotiations with the plaintiff, the plaintiff had notice of his limited powers, and could solicit, not perfect, or complete, contracts of insurance; and the plaintiff was informed at the first interview that he could not give him the rates, nor do otherwise than report the application to the state agent at Richmond. But whatever may have been the powers of this solicitor, no contract is proved by the evidence to have been made with him. If no fire had occurred, and no premium had been paid by the plaintiff, nothing had been agreed upon which would have enabled the company to demand the premiums of the plaintiff. The acts that took place on the 23d of December, were necessary to give to the conversation of the 10th of December the character and form of a contract. With all those acts it was incomplete and not binding on the company nor on the plaintiff; and when these acts *were performed* the insurable subject *had ceased to exist.*

The plaintiff having failed to sustain the case set up in his bill, the same should have been dismissed; and the chancery court of the city of Richmond having so decided, we are of opinion that is no error in the said decree and the same must be affirmed.

DECREE AFFIRMED.