FRANK HUGHES, Plaintiff, *v.* JOHN HANCOCK MUTUAL LIFE INSUR-
ANCE COMPANY, Defendant.

Municipal Court of New York, Borough of Queens, First District, April 26, 1937.

*Irving Cook,* for the plaintiff.

*Tanner, Silcocks & Friend* [*William Moore* of counsel], for the defendant.

PETTE, J. In this action, the plaintiff, as alleged beneficiary, seeks to recover the sum of $1,000, the death benefit under an alleged policy of insurance, for which an advance payment of $2.15 was paid on December 14, 1936, at the time the application was signed by Thomas Hughes. The applicant died subsequently on January 5, 1937, and no policy was ever issued, although it is the plaintiff's contention that the defendant's agent, I. Israel, represented that about ten days after the alleged premium was paid, the application had been accepted at the defendant's home office.

Testimony was taken at length upon the trial and the issues of fact were submitted to the jury which returned a verdict in favor of the plaintiff. The defendant makes the present motion to set aside the aforesaid verdict as contrary to the evidence, against the weight of the evidence and contrary to the law.

The defendant's contention is based upon the language of its temporary receipt given to the deceased applicant on December 14, 1936, wherein it is stated that the insurance application " *if it* [the application] *is approved at the Home Office of the Company, shall be in force from the date of the completion of the application, provided* that on said date the applicant was insurable in accordance with its rules for the amount. * * * *Such approval shall constitute in effect a delivery of the policy. If within s xty days of its date, the application be not approved or if no notice be given by the Company of action therein, the monthly premium so paid will be returned upon surrender of this receipt.*"

The principal question to be determined is whether or not an enforcible contract of insurance was created under the foregoing facts.

The general rule is that, to constitute a contract, there must be an acceptance of the offer because until the offer is accepted, both parties have not assented to the contract, or in the figurative language frequently used by the courts, their minds have not met. (*Barrow Steamship Co., Ltd.,* v. *Mexican Central Railway Co.,* 134 N. Y. 15.) The defendant contends that its conduct towards the applicant clearly shows that there never was an unconditional acceptance of his application for an insurance policy by the home office. While conceding that there was no written acceptance of

the deceased's application, the plaintiff urges that the defendant's conduct under the circumstances was sufficient to constitute an acceptance.

Unquestionably acceptance may sometimes be indicated by conduct or acquiescence. (*Barber-Greene Co., Inc.*, v. *Dollard, Jr., Inc.*, 239 App. Div. 655.) This has been found generally in cases of waiver or estoppel and where assent has been inferred as a matter of law from the failure to act.

However, in an action involving the same legal principle (*Truglio* v. *Zurich General Accident & Liability Ins. Co.*, 247 N. Y. 423), CARDOZO, J., held: " We are told that such assent is to be inferred as a matter of law from the failure to act upon the request for two days, and this in the face of a provision that no assignment shall be effective without written approval indorsed on the policy. Contracts are not made so easily. The defendant was free to accept or reject the new owners either with reason or without. Mere silence or inaction left the situation as it was." In 1 Williston on Contracts (p. 168) it is said: " Generally speaking an offeree has a right to make no reply to offers."

As a general rule, where the contract is wholly executory, the circumstances must be very peculiar under which an acceptance may be inferred from silence merely. *In such cases, silence can operate ordinarily as an acceptance only by way of estoppel,* and to raise an estoppel from silence there must have been some duty to speak, and the failure to do so must have operated to mislead, and generally a person is under no obligation to do or say anything concerning a proposal which he does not choose to accept. In *More* v. *New York Bowery Fire Ins. Co.* (130 N. Y. 537, 545) the Court of Appeals ruled: " The courts have applied the principles of waiver and equitable estoppel in a most liberal manner to insurance contracts, but always to enforce good faith and to prevent injustice and fraud where the insured has been misled by the acts of the company or its agents. *But no case has yet decided that the mere failure to respond to an application raised an inference that the Company accepted and insured the risk. A party cannot be held to a contract where there is no assent.*"

In the case at bar the plaintiff failed to establish by any proof that a situation of estoppel had been created by the insurance company's conduct and that its silence and failure to act on the deceased's application misled him. There must be such conduct on the part of the insurer as would, if it were not estopped, operate as a fraud on the party who has taken or neglected to take some action to his own prejudice in reliance upon it. (*More* v. *New York Bowery Fire Ins. Co., supra.*)

When a party is under a duty to speak, or when his failure to speak is inconsistent with honest dealings and misleads another, then his silence may be deemed to be acquiescence. If the defendant company knew that Israel or another agent was acting in excess of authority and did not disclaim his acts, it might be held liable, as in such a case there is a duty to speak.

But in this case the plaintiff offered no proof as to elements of that character nor as to the authority of any agent to bind the home office of the defendant company with respect to the acceptance of applications for insurance. Neither the plaintiff nor the deceased was misled by the defendant company. They knew they had no contract of insurance until the application was approved by the home office. Similar conclusions have been arrived at in other jurisdictions. (*Insurance Co.* v. *Johnson*, 23 Penn. St. 72; *Royal Ins. Co.* v. *Beatty*, 119 id. 6; 12 A. 607; *Haskin* v. *Agricultural Fire Ins. Co.*, 78 Va. 700; *Misselhorn* v. *Mut. R. F. Life Assn.*, 30 Fed. 545; *Winnesheik Ins. Co.* v. *Holzgrafe,* 53 Ill. 516.)

And it was said in *Titus* v. *Glens Falls Ins. Co.* (81 N. Y. 410), in reference to a waiver by an insurance company of a breach of a condition which forfeited a policy, that " *a waiver cannot be inferred from its mere silence.*"

To quote once again from the learned opinion in *More* v. *New York Bowery Fire Ins. Co.* (*supra*, p. 547), " *Our opinion is that when an application for insurance is made, and its rejection is not signified, no presumption of its acceptance can be indulged in.* There must be actual acceptance or there is no contract."

Now, it is plain that defendant's agent Israel had no right to make any statements as to the acceptance of the application such as would bind the defendant's home office. Had the plaintiff or the applicant any right to rely on it? Did the acceptance of the premium of $2.15 by Israel, coupled with the alleged statement by him ten days later, that the application was accepted, bind the defendant? Obviously not, since at the beginning the very clear and unambiguous language of the receipt informed them that only the home office could approve the application. This fact limited and qualified all subsequent dealings or conversations with Israel. A different question would have been presented had the plaintiff or the applicant dealt with the agent with no knowledge as to any limitations upon his powers (*Bodine* v. *Exchange Fire Ins. Co.*, 51 N. Y. 117; *Arff* v. *Star Fire Ins. Co.*, 125 id. 57, 64.) But such a case is not presented here on the facts.

The temporary receipt clearly sets forth a conditional o ˙ qualified acceptance of the insured's application, dependent upon the approval thereof by the company's home office. It represented an unambiguous agreement between two competent, contracting parties.

A further condition expressed in said receipt must be taken into consideration as being of utmost importance. *The applicant expressly agreed that he could not ask for a return of his premium deposit until after sixty days of its payment and the application had not been approved or other notice sent by the company.*

This provision clearly excludes speculation as to the intention of the applicant and the defendant company since it represents an express unequivocal conditional waiting period. *The company reserved unto itself sixty days to accept or reject the continuing offer of the applicant for a policy of insurance.* An offer which is left open for future acceptance, as in the instant application for insurance, is a continuing offer during the time limited for acceptance, unless revoked. As soon as it is accepted, it ripens into a contract. (*Braverman* v. *Naimark*, 194 N. Y. Supp. 855.) This waiting period was apparently reserved by the company for its course of investigation as to the applicant's record, moral risk, etc. The court cannot disregard the express condition contained in the receipt to which the applicant acceded without modification. Neither the court nor the jury may substitute its ideas as to such clear expressions of the respective parties. The form and content of the agreement is fair and does not work any unusual hardship on any applicant for insurance. A contrary interpretation of the language of the receipt would violate the elementary principles of the freedom of contractual rights.

"*If,*" as defined in Webster's Twentieth Century Dictionary (unabridged), has the meaning of "in case that;" the same word, in Black's Law Dictionary (p. 589) is said to imply a *condition precedent*, unless it be controlled by other words. In *Marschall* v. *Eisen Vineyard Co.* (7 Misc. 674, 676) it was held that the word "if," in the definition of lexicographers as well as in popular apprehension, is a word which introduces a conditional clause.

Thus in the instant case the receipt stated "*if within sixty days* of its date, the application is not approved   *   *   *   the monthly premium will be returned." It is well-settled law of this State that where the offer is subject to conditions requiring something more than the mere expression of assent of the person attempting to accept them, there must be a compliance with such conditions. The failure to comply therewith, whether as the result of misapprehension, inadvertence or neglect of the party seeking to take advantage of the offer, will prevent a consummation of the contract. (1 Clark's New York Law of Contracts, p. 44.) An acceptance or statement qualified or introduced by "if" is regarded as conditional. (*Marschall* v. *Eisen Vineyard Co., supra.*)

In a similar action, *Marks* v. *Hope Mutual Life Insurance Co.* (117 Mass. 528), the binding receipt provided, in part, as follows: " Received from Joseph Marks, ten and fifty one hundredths dollars, for which (provided the application is approved at the home office) I agree to furnish him a fifteen years' endowment policy upon his life, for five thousand (5,000) dollars, from the Hope Mutual Life Insurance Co. of New York, *within thirty days from date*, or if the application is declined, to return the above amount to him or his order, on demand and return of this receipt."

The court (at p. 532) held: " we are unable to give to the writing any effect except as an agreement to return the money received unless a policy should be issued and furnished to the plaintiff within *thirty days. It cannot operate as a present insurance for thirty days*, or until a policy should be furnished." (Italics not in original.)

Similarly in the leading case of *Mutual Life Ins. Co.* v. *Young's Administrator* (23 Wall. [90 U. S.] 85, 106; 23 L. Ed. 152) the language of the receipt recited in part, " provided that said application shall be accepted by the said company." No time limit was inserted.

With respect to this receipt, the court said: " The receipt   *   *   * was the initial step of the parties. *It reserved the absolute right to the company to accept or reject the proposition which it contained.* *   *   * The entire subject was both affirmatively and negatively within its choice and discretion. The acceptance was a qualified one, and there was none other."

The case of *Hart* v. *Travelers Ins. Co.* (236 App. Div. 309; affd., 261 N. Y. 563), cited in support of plaintiff's contention, is not in point, since that case involved an ambiguous binding receipt, which is not true of the receipt in this action. The applicability of the authority of *Buono* v. *Prudential Ins. Co.* (240 App. Div. 898) to the present action is not clear since the language of the temporary receipts and other facts differ and the case turned upon an entirely different question.

In the case at bar, as in the action of *Corning* v. *Prudential Ins. Co. of America* (248 App. Div. 187), the language of the receipt in the one sentence dealing with the taking effect of the insurance, fortified by similar language in the application, makes it plain that approval by the company was a prerequisite.

The clear and unambiguous language of the application and receipt in this case requires a holding that the insurance was not to take effect until the application was approved, and, under the undisputed facts, no such approval was given by the defendant company's home office. The plaintiff herein does not claim that

there was any ambiguity in the receipt so as to come within the ruling of the *Hart* case, and neither this court nor the jury may modify the express language of said receipt.

Defendant's motion to set aside the verdict of the jury herein should be and the same is hereby granted, said verdict being contrary to the law, contrary to the evidence and against the weight of the evidence. Submit order.