# Richmond

ANNIE C. HAYES v. DURHAM LIFE INSURANCE COMPANY, A CORPORATION.

January 21, 1957.

Record No. 4602.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*Ernest W. Williams* (*Williams, Williams, Williams & Williams,* on brief), for the plaintiff in error.

*Lawrence E. Blanchard, Jr.* (*Angus H. Macaulay, Jr.* and *Hunton, Williams, Gay, Moore & Powell,* on brief), for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

Mrs. Annie C. Hayes instituted this action to recover $6,500 from the defendant, the Durham Life Insurance Company. She alleged in her motion for judgment that she was the beneficiary named in a "certain contract of life insurance," between the defendant company and Ozy Earle Hayes, her late husband, and that such contract was in full force and effect at the time of her husband's death. The defendant company filed its answer and grounds of defense, in which it admitted that Ozy Earle Hayes had made an application to it for life insurance; but denied that his application had ever been accepted, and that any contract for life insurance was or ever had been in effect between the defendant and plaintiff's husband.

The case came on to be heard, and at the conclusion of plaintiff's evidence, the trial court sustained defendant's motion to strike the evidence. The jury returned a verdict for the defendant and judgment was accordingly entered. Upon plaintiff's petition we granted this writ of error.

The evidence is without material conflict and presents the following facts and circumstances:

On March 17, 1955, Ozy Earle Hayes made application for life insurance with the defendant in the amount of $6,500 through its agent, J. W. Douglas.

The application, signed by the decedent, reads, in part, as follows: "* * *2. That no statements, promises or information made or given by or to the person soliciting or taking this application for a policy, or by or to any other person, shall be binding on the Company or in any manner affect its rights, unless such representations, promises or information be reduced to writing and presented to the Officers of the Company at its Home Office. * * * 4. That the Company shall incur no liability on account of this application until a policy be issued and delivered to me during the lifetime and good health of the life insured and the full first premium stipulated in the policy has actually been paid to and accepted by the Company * * *."

Hayes was told by Douglas that there was no need to make payment of the initial premium until he had passed a medical examination. On March 19th, Hayes was examined by a physician, and on March 20th or 21st, the physician advised Douglas that Hayes had passed the examination.

On March 22, 1955, after the application was received at the home

office of the defendant company at Raleigh, North Carolina, it wrote Hayes thanking him for choosing the Durham Life Insurance Company as the medium for his insurance, advising him that his application would be given prompt consideration. On the same day, it wrote its district manager at Richmond, Virginia, that it would not accept the application for insurance except on a rated basis at a higher premium, and that it would further consider the application if Hayes was willing to pay the increased premium. Not receiving an answer, the home office again wrote its local office on April 1, 1955, requesting a reply to its letter of March 25th. No answer was made to this letter.

On March 25th, Douglas advised Hayes that he had "passed" the physical examination, collected from the applicant $8.90, and gave him a receipt for the premium, using a receipt form not usually associated with such an application. This receipt stated with respect to the "Policy No." that there was "None," and that the money paid was received "as a deposit to be applied on account of premiums on the above policy, providing it is in force * * *."

On April 13, 1955, Hayes died from a heart attack while at work. His death was reported the next day to the Richmond office of the defendant. On April 15, 1955, the home office of the defendant made an additional inquiry of the local office regarding its letter of March 25th. On April 18th, the local office replied, informing the defendant that the applicant had died on April 13th, and that the premium collected had been returned.

It is undisputed that Douglas was only a special agent in soliciting for life insurance, and that he had no power to approve the acceptance of an application for insurance, make any insurance contract, issue a policy, or to represent that the insurance would be effective from the date of the application therefor. The defendant company, moreover, did not issue or authorize to be issued interim or "binding" insurance, that is, insurance effective from the date of the application and payment of the premium for a policy. Its rules required that all applications be sent to the home office for consideration.

▮ To be effective as a completion of a contract of insurance the acceptance of an application or proposal therefor, like the acceptance of offers generally, must be upon the terms offered. The application for insurance is a mere proposal for a contract on the part of applicant. It is one of two prerequisites in the creation of the contract, the other consisting of the acceptance of the offer. No contractual re-

lationship exists between the parties until acceptance by the insurer, and the application may be withdrawn at any time by the applicant before it is definitely accepted. 10 M. J., Insurance, § 20, page 307; 29 Am. Jur., Insurance, § 137, page 152; and § 139, pages 153, 154.

In Virginia we have long been in accord with the weight of authority that mere delay on the part of an insurance company in refusing to act upon, or failing to act upon, an application for insurance does not of itself create a contract, nor estop the insurance company from denying that any contract was made. *Haskin* v. *Agricultural Fire Ins. Co.*, 78 Va. 700 (1884); *Haden* v. *Farmers & Mechanics Fire Association*, 80 Va. 683; *Peoples Life Ins. Co.* v. *Parker*, 179 Va. 662, 20 S. E. 2d 485; 10 M. J., Insurance, § 20, page 307; 29 Am. Jur., Insurance, § 141, page 155, *et seq.*; Annotation, 32 A. L. R. 2d 487, *et seq.*; 1 Cooley's Briefs on Insurance, 2d Ed., page 596; Vance on Insurance, 3rd Ed., § 38; *Ross* v. *N. Y. Life Ins. Co.*, 124 N. C. 395, 32 S. E. 733, 734; *Zayc* v. *John Hancock Mutual Life Ins. Co.*, 338 Pa. 426, 13 A. 2d 34, 36. Cf. *Northern Neck Mutual Fire Association* v. *Turlington*, 136 Va. 44, 116 S. E. 363.

In this case the plain and simple language of the application and the terms of the receipt put the applicant on notice that he was not protected unless and until a policy of insurance was "issued and delivered" to him during his lifetime and while he was in good health.

In *Haskin* v. *Agricultural Fire Ins. Co.*, *supra*, 78 Va. at page 707, we said this:

"The fact that an application has been made for insurance, and a long time has elapsed, and the rejection of the risk has not been signified, does not warrant a presumption of its acceptance. In such cases there must be an actual acceptance, or there is no contract."

In *Haden* v. *Farmers & Mechanics Fire Association*, *supra*, 80 Va. at page 694, this was said:

"Negligence cannot make a contract of insurance; delay cannot make a contract of insurance."

In 1 Cooley's Briefs on Insurance, 2d Ed., page 596, the author says:

"The rule established by the overwhelming weight of authority seems, however, to be that *mere delay, mere inaction, cannot amount to an acceptance of the application.*"

In an extensive and exhaustive annotation entitled "Rights and remedies arising out of delay in passing upon application for insurance," in 32 A. L. R., 2d, beginning at page 491, many cases are re-

viewed dealing with contract liability as well as tort liability. The conclusions of the author with reference to contract liability, the subject before us, is summarized on page 493 as follows:

"Based on the doctrines that an application for insurance is a mere offer, which must be accepted before a contract of insurance can come into existence, and that silence and inaction do not amount to an acceptance of an offer, the overwhelming weight of authority is to the effect that, at least in the absence of additional circumstances, no inference or presumption of acceptance which would support an action ex contractu can be drawn from mere delay or inaction by the insurer in passing on the application."

While we have not dealt with the precise question of the effect of delay or inaction by an insurance company in passing on an application for life insurance, we perceive no distinction between a life insurance contract and other contracts of insurance on that particular point. The great majority of the courts, textwriters, and annotators make no distinction. Moreover, cases from Virginia are listed in the group which shows the majority rule, hereinbefore stated. 32 A. L. R. 2d, pages 493, *et seq.*

Plaintiff seeks to recover on the theory that defendant accepted the application of Hayes on a qualified basis, and that having failed to promptly communicate its counter proposal to the applicant, or return the premium in a reasonable time, it "committed a tortious dominion over the proposal," which gave the applicant the right to treat his application as accepted.

This contention overlooks the following facts,—that this was not a proceeding in tort; that there was no acceptance of the application upon any basis; that there was no fraud alleged or proven; and that Hayes was charged with knowledge that no contract of insurance would arise until after approval of his application. Under the majority rule, the retention of the deposit by defendant until agreement could be reached was immaterial. *Zayc* v. *John Hancock Mutual Life Ins. Co., supra;* 32 A. L. R. 2d 498.

There was no evidence of the waiver of any provisions in the application signed by the defendant. The provision that the company should incur no liability until the policy was issued and delivered to the applicant informed the applicant that no contract existed until the application had been approved, and thereby limited and qualified all subsequent actions. "To raise an estoppel from silence there must have been some duty to speak, and the failure to do so must have op-

erated to mislead." *Hughes* v. *John Hancock Mutual Life Ins. Co.,* 163 Misc. 31, 33, 297 N. Y. S. 116, 120, (N. Y. Mun. 1937).

Plaintiff relies on several cases which hold that an unreasonable delay in acting upon an application, along with the retention of the premium, constitutes an acceptance of the application, upon a theory that such action is inconsistent with a rejection of the risk. She cites *Reck* v. *Prudential Ins. Co. of America,* 116 N. J. L. 444, 184 A. 777; *Harding* v. *Metropolitan Life Ins. Co.,* 188 So. 177 (La. App.); and *American Life Ins. Co. of Alabama* v. *Hutcheson,* 109 F. 2d 424. These cases represent a distinct minority rule adopted in a very few jurisdictions. They are distinguishable upon the facts, especially as to the language of the particular form of application or the receipts employed.

For the foregoing reasons, we are of opinion that the trial court was clearly right in striking the evidence and entering judgment for the defendant on the verdict of the jury, and its judgment is affirmed.

*Affirmed.*