Betty B. BURGESS, Individually and as Administratrix of the Estate of S. Reed Burgess, Jr., deceased, Plaintiff,

v.

CHARLOTTESVILLE SAVINGS AND LOAN ASSOCIATION, Defendant.

Civ. A. No. 71–C–33–C.

United States District Court,
W. D. Virginia,
Charlottesville Division.

Aug. 24, 1972.

McGuire, Woods & Battle, Charlottesville, Va., for plaintiff.

B. B. Woodson, Charlottesville, Va., and Garland M. Harwood, Jr., Shewmake & Gary, Richmond, Va., for defendant.

## OPINION AND JUDGMENT

DALTON, District Judge.

This action originally was brought in the Corporation Court of the City of Charlottesville, Virginia, and removed to this court on December 3, 1971, pursuant to 28 U.S.C.A. § 1441(c). The amount in controversy exceeds $10,000 and the case involves construction and interpretation of federal law, to-wit, the federal Truth-In-Lending Act, 15 U.S.C.

§§ 1601 et seq.; 12 C.F.R. §§ 226.1 et seq., thereby satisfying the jurisdictional requirements of 28 U.S.C. § 1331(a).

Plaintiff's original action in the Corporation Court was an action for breach of contract, and under the Rules of Pleading in the State Court, plaintiff was barred from joining actions in tort and contract. Plaintiff, in a motion for leave to file an amended complaint, filed on March 17, 1972, in this court, seeks to join counts sounding in tort with the contract action initially pleaded.

Defendant states that the amended pleadings of the plaintiff do not allege a tort cause of action recognized in Virginia, and therefore the motion to amend should be dismissed.

This court must consider whether the amended pleadings of the plaintiff do, in fact, allege a tort cause of action. The court must then consider whether the plaintiff has established a valid case on the merits.

The facts of the case are as follows: An application for a $20,000 mortgage loan was made by plaintiff and her deceased husband, S. Reed Burgess, Jr., with the defendant, Charlottesville Savings and Loan Association on March 23, 1971. The loan was to be used to purchase a home in an Albemarle Co. subdevelopment near Charlottesville. Following a credit check of plaintiff and her husband, Charlottesville Savings and Loan, represented by William H. Grimm, Executive Vice-President, wrote their attorney, Miss Ellen V. Nash, on April 15, 1971, stating that it was ready to make a commitment and requesting the closing costs for the transaction. On May 10, 1971, Miss Nash furnished the closing costs in a memorandum to Mr. Grimm and requested closing by May 12, 1971. Mr. Grimm, upon receipt of Miss Nash's memorandum on May 10, prepared the loan commitment, closing instructions and Truth-In-Lending Statement (Regulation Z) and sent them to Miss Nash. These were subsequently signed by the plaintiff and her deceased husband, and on May 12 plaintiff and her attorney, Miss Nash, presented these forms to defendant and a check for $20,000 was issued by Mr. Grimm, payable to the order of Nash and Edelson. The plaintiff and her husband agreed to repay said loan in three hundred (300) monthly installments of one hundred forty-seven dollars and eighty cents ($147.80) and granted defendant a security interest in their home.

The plaintiff and her deceased husband purchased the home in the subdivision in Albemarle County with the loan money and there resided together until plaintiff's husband, who was a maintenance craftsman for Virginia Telephone and Telegraph Company, was killed on June 16, 1971, in an accident while installing an antenna. Within a week after his death, Mrs. Burgess, in a personal visit to Charlottesville Savings and Loan, made a claim of payment due from the credit life and disability income insurance, which she claimed should have paid the loan upon the death of her husband. Defendant denied that any payment was due since the necessary application for life and disability income insurance had never been filed by either the plaintiff or her deceased husband. In a letter to plaintiff, dated July 26, 1971, the defendant regretfully denied any claim of payment due. A motion for judgment was filed in the Corporation Court of the City of Charlottesville by the plaintiff on November 12, 1971, and removed to this court on December 3, 1971.

The plaintiff's complaint centers on the Truth-In-Lending Statement (Regulation Z) which was filled in by the defendant on May 10, mailed to plaintiff's attorney, Miss Nash, and subsequently signed by plaintiff and her deceased husband on May 12. Specifically, the section in question on the printed form (Regulation Z) is a paragraph entitled "OTHER INSURANCE" which states:

Credit life, accident, health or loss of income insurance is not required to obtain this loan. No charge is made for such insurance and no such insurance is provided unless the borrower

signs the appropriate statement below. *Credit Life & Disability Income Ins.* is available at a cost of *$3,585.00* for the *25* year term of the initial policy. *$11.95 Per Month.* [Italicized portions typed in by defendant.]

Defendant, S. Reed Burgess, Jr.; and his wife, the plaintiff, completed and signed a statement immediately following the paragraph quoted above, which said "I desire *Credit Life & Disability Income* insurance coverage." [italicized portion written in by decedent, S. Reed Burgess, Jr.]. The signatures of plaintiff and her husband appear directly below this statement, opposite the date, May 12, 1971.

Certain discrepancies are apparent in the depositions as to whether Mr. Grimm informed plaintiff on May 12 that she and her husband would have to fill out an application for the insurance, and whether she was further contacted by telephone on May 20 by Mrs. Kathleen Davis, secretary for defendant, regarding setting up an appointment for making an application for insurance. According to the testimony of officers of the Savings and Loan, plaintiff was advised on May 12, upon delivering the Regulation Z disclosure statement included in the loan papers, that an application would have to be filled out by the Burgesses in order to obtain insurance. Plaintiff allegedly replied that she would call to make an appointment to fill out the insurance application after she had talked to her husband because it was difficult for him to be absent from work during business hours. In her testimony, plaintiff denies she was advised by the Savings and Loan of the necessity of filling out an insurance application.

On May 20, 1971, according to the testimony of Mrs. Kathleen Davis, secretary to Mr. Grimm, Mrs. Davis called plaintiff to determine where to send the monthly statement on their outstanding loan since the Burgesses were in the process of moving and had two addresses, one a post office box and the other a residence address. In the course of the resulting conversation, Mrs. Davis, according to her testimony, reminded plaintiff of the necessity of making an appointment to fill out an insurance application if the Burgesses still desired credit life insurance on their loan. In her testimony, plaintiff denies having any conversation with Mrs. Davis on the telephone.

However, on May 21, 1971, Charlottesville Savings and Loan sent to plaintiff and her deceased husband a form letter advising them of their monthly payments. The payments were itemized as follows:

| | |
|---|---|
| Principal and Interest: | $147.80 |
| Real Estate Tax: | 17.82 |
| Hazard Insurance Premium: | 10.38 |
| Total Monthly Payment | $176.00 |

The letter further stated that payments were due on the 12th of each month in defendant's office, and that the first payment was due on June 12, 1971. No mention was made in this letter of the credit life and disability insurance, nor were any premium payments to that effect itemized in the monthly payment section.

On June 2, 1971, the Savings and Loan received the first loan payment for the Burgesses and this payment did not include any premium for credit life insurance.

When plaintiff and her deceased husband completed and signed a *Statement of Loan Settlement* on May 12, 1971, the monthly payment box outlined the monthly payment as follows:

| | |
|---|---|
| Interest and Principal | $147.80 |
| Taxes | 17.00 |
| Hazard Insurance | 10.36 |
| Mutual Mortgage Insurance | 11.95 |
| Total monthly payment | $187.11 |

The $11.95 figure for mutual mortgage insurance is the same $11.95 figure cited in the Regulation Z statement for credit life and disability income insurance which plaintiff and her husband indicated they desired and signed on the closing date May 12, 1971. This $11.95 figure was omitted from defendant's monthly payment letter of May 21, 1971, and the monthly payments of which

plaintiff and her husband were advised were approximately $11.00 less than the loan statement which plaintiff and her husband signed on May 12, 1971. The first payment which the Burgesses made on June 2, 1971, was approximately $11.00 less than the amount originally contracted for in the Statement of Loan Settlement, reflecting the omission of the credit life insurance payment.

### Ruling on Motion to Amend

■ Now the court must consider whether plaintiff's amended pleadings allege a tort cause of action. Under the Federal Rules of Civil Procedure, Rule 18, Joinder of Claims and Remedies, a contract cause of action and a tort cause of action may normally be joined in a civil suit in a Federal Court in cases in which the Federal Court applies state law, if both causes of action are recognized causes of action under state law. However, if state law does not recognize the tort cause of action pleaded, then the contract and tort action cannot be joined in Federal Court. Justice v. Prudential Insurance Co. of America, 351 F.2d 462 (4th Cir. 1965).

This court must now consider whether defendant was negligent in failing to forward the plaintiff's insurance application or in failing to procure insurance.

Defendant's executive vice-president, William H. Grimm, is licensed by the State of Virginia as a life agent for three companies: Protective Life Insurance Company; Integon Life Insurance Corporation; and, Liberty Life Insurance Company. The insurance agencies authorize the solicitation of insurance contracts by Mr. Grimm but not the procurement thereof. It was an impossible task for defendant to forward an application when there was none to forward and it was impossible for defendant, under Virginia law and company policy, to procure insurance without such an application. Code of Virginia § 38.1–330.

This court must now consider whether defendant was negligent in failing to notify plaintiff of her lack of insurance coverage.

■■ Even though there is testimony that the plaintiff was notified of her lack of insurance coverage and of the necessity for completing an application, Virginia law does not recognize as a tort a failure to timely notify an insurance applicant of lack of coverage. Hayes v. Durham Life Insurance Co., 198 Va. 670, 96 S.E.2d 109 (1957); Justice v. Prudential Insurance Co. of America, *supra*. In Justice v. Prudential Insurance Co. of America, *supra*, the plaintiff's husband had signed an application for a group insurance policy and had paid the first premium, but died before he received notice that he had been rejected by the company for lack of certain medical information. Holding the case of Hayes v. Durham Life Insurance Co., *supra*, to be controlling, the Fourth Circuit Court of Appeals ruled that Virginia did not recognize as a tort the holding of a premium by an insurance company when the result was to give the impression of insurance coverage. If Virginia law, as interpreted by the Fourth Circuit, does not recognize as a tort a plaintiff's detrimental reliance when he has made an application for insurance and paid the premium, it is not reasonable that Virginia law would recognize detrimental reliance when the plaintiff had completed no application and paid no premium as in the case before this court. Indeed, the only action the plaintiff took was to express a desire for insurance by signing the Truth-In-Lending statement. Furthermore, plaintiff was charged at law with the knowledge of the steps necessary to make a contract of insurance. That knowledge would have made the plaintiff fully aware of the fact that no insurance contract had been completed since no application was filed and that there was no insurance coverage. Thus, not only has the plaintiff failed to make out a cause of action under Virginia law, but she was also charged by law with knowledge that would have made her fully aware of her lack of coverage.

The court will also consider whether plaintiff in law could have reasonably expected that life insurance would be

procured in accordance with Virginia Code 38.1–482.9. This code section is part of Article 5.1 of the Virginia Code, entitled Credit Life Insurance and Credit Accident and Sickness Insurance. Article 5.1 expressly limits its application to credit transactions of less than five years duration (Section 38.1–482.1), and only requires immediate coverage when the lending institution is covered by a group policy.

The loan between defendant and the Burgesses was for a twenty-five year period, which made Article 5.1 inapplicable to the transaction. Furthermore, defendant is not covered by a group policy, but only accepts applications for credit life insurance individually from each customer who desires it and fills out the necessary application and forwards such application to an insurance carrier. Even if the defendant had been covered by a group policy, it would have been impossible for defendant to have provided full coverage to the Burgess loan because Article 5.1 limits the coverage of a debtor under a group policy to a maximum of $10,000, Code of Virginia, 38.1–482.1. The court notes that it is undisputed that credit life insurance for mortgage loans is the exception rather than the custom and that credit life insurance is not required for any loans made by Charlottesville Savings and Loan.

■ Accordingly, this court finds that the plaintiff has not pleaded the elements of a cause of action in tort under Virginia law. Therefore, plaintiff's motion to amend the pleadings to join a tort cause of action to the present contract cause of action is denied.

### Ruling on the Merits

The court must now consider whether plaintiff has established a valid breach of contract claim and should be awarded damages from losses suffered by defendant's failure to obtain credit life insurance on the loan.

Several questions must be answered before the court can reach a decision:

1) Did Charlottesville Savings and Loan and the Burgesses either orally or in writing form a contract of credit life insurance or a contract to write credit life insurance? 2) Did Charlottesville Savings and Loan and the Burgesses either orally or in writing form a contract in which Charlottesville Savings and Loan agreed to procure credit life insurance for the Burgesses, and if so did the Charlottesville Savings and Loan breach the contract by not obtaining insurance? 3) Does the Truth-In-Lending Act and its accompanying regulation, Regulation Z, require a lending institution to disclose that it will procure credit life insurance and to agree to procure such insurance?

First, this court must consider whether defendant and the Burgesses either orally or in writing formed a contract of credit life insurance or a contract to write credit life insurance.

In depositions taken of Mr. Grimm, defendant's executive vice-president, on March 28, 1972, he pointed out that an essential element for the formation of a credit life and disability insurance contract is that the applicants complete an application therefor. In fact § 38.1–330 of the Code of Virginia states that no contract of insurance upon the person shall be made or effectuated unless at the time of the making of the contract the individual insured makes an application for such insurance. Such an application is a prerequisite to obtaining such insurance.

■ Plaintiff contends that an oral contract for credit life insurance may be effectuated under § 38.1–332 of the Code of Virginia, however, this section only applies to "temporary insurance . . . for a period not exceeding sixty days pending the issuance of the policy . . . " Section 38.1–332 further states that this temporary insurance shall "include the usual provisions, stipulations and agreements which are commonly used in this State in effecting such insurance." In this instance, there

was no mention of any "temporary insurance," by the parties, nor was any permanent policy "pending" at the time. Furthermore, it is doubtful whether defendant's life agent, Mr. Grimm, had the authority to issue temporary policies, since his insurance companies limited him to the solicitation but not the procurement of all life policies. Therefore, it cannot be contended that an oral contract for temporary insurance was ever made, since no offer for this type of insurance was given, nor was it within Mr. Grimm's authority to make such an offer.

A further consideration for this court in determining whether a credit life insurance contract existed is that a contract of insurance or a contract to write insurance must be made with a company in the insurance business. Charlottesville Savings and Loan is not licensed to engage in the insurance business, as required by Virginia statute, Code of Virginia § 38.1–74 and was specifically prohibited by Virginia statute from engaging in the insurance business because of its status as a banking institution, Code of Virginia § 38.1–31. Furthermore, Mr. Grimm, in his capacity as a life agent was limited by Virginia law to taking applications of insurance to be forwarded to appropriate insurance companies and could not make a contract of insurance for such a company. Code of Virginia, §§ 38.1–280, 283, 284, 294 and 330. Botts v. Shenandoah Life Insurance Company, 134 F.Supp. 893 (W.D. Va.1954).

■ Despite the plaintiff's allegations, there is no evidence of the existence of any written contract of life insurance. The only written document involving insurance completed by the Burgesses and Charlottesville Savings and Loan was the Regulation Z disclosure statement. The purpose of this document was to disclose the costs involved in the Burgesses' loan from defendant and not to form an insurance contract. Truth-In-Lending Act, 15 U.S.C.A. §

1601. Furthermore, it is impossible for this document to be a contract of insurance under Virginia law. The disclosure statement does not meet the Virginia common law requirements for an insurance contract. American Surety Co. v. Commonwealth, 180 Va. 97, 21 S.E.2d 748 (1942); does not meet the Virginia statutory requirements for an insurance contract, Code of Virginia § 38.1–333; and has not been approved for use as an insurance contract by the State Corporation Commission as required by Virginia statute, Code of Virginia 38.1–342.1.

Because of the impossibility of making a contract of life insurance between Charlottesville Savings and Loan and the Burgesses and the lack of evidence of any such contract, this court must conclude as a matter of law that there was no contract of insurance.

Secondly, did Charlottesville Savings and Loan and the Burgesses either orally or in writing form a contract in which the defendant agreed to procure credit life insurance for the Burgesses, and if so did the defendant breach that contract by not obtaining the insurance?

■■ Mr. Grimm stated that an application is required, along with a physical examination, and approval by the home office, before an insurance contract may be procured. It is therefore impossible for an insurance agent to make a "contract to procure insurance" without the applicant taking the affirmative steps required. The completion of an insurance application is a condition precedent to performance on any contract to procure insurance and it is impossible to perform such a contract without said application. The Burgesses were charged, in law, with notice that neither defendant nor any of its officers, directors, employees or agents were authorized or empowered to procure credit life insurance, whether requested orally or in writing, unless plaintiff and decedent affirmatively applied therefor

in writing. Northern Neck Mutual Fire Ass'n v. Turlington, et al., 136 Va. 44, 116 S.E. 363 (1923).

■ The Regulation Z disclosure statement section on insurance was not intended to form a contract to procure insurance, but rather was intended to serve as notice to both the borrower and the lender. The statement gives the borrower notice of the availability and approximate cost of credit life insurance and gives the lender notice of the borrower's interest or lack of interest in such insurance. Being a form of notice, the disclosure statement is part of the preliminary negotiations leading to a contract to procure insurance rather than a contract itself. As with all other contracts, a contract to procure insurance can only be formed if there is a mutual meeting of the minds, and will fail if the terms of the contract are too indefinite.

■ In the instant case, there was no meeting of the minds and the terms of the contract were not clarified. By the depositions, it is evident that the Burgesses' understanding of their duties under a contract to procure insurance was significantly different from Charlottesville Savings and Loan's understanding of those duties. The Regulation Z disclosure statement alone cannot constitute the necessary meeting of the minds because many essential elements of such a contract are plainly missing. No mention is made of the company from which insurance was going to be procured though such a stipulation was necessary since Mr. Grimm was an agent for three different insurance companies, each with different rates. No mention is made of what duties the Burgesses had, if any, to assist in the procurement of insurance (although by law they had to fill out an application before any insurance could conceivably be procured). And no mention is made of the time for performance on the contract, i. e., by what time the insurance was to be procured. Furthermore, from the depositions, it is clear that in any conversations between Mr. Grimm and the Burgesses subsequent to the signing of Regulation Z, they did not achieve mutual agreement of the terms of the contract.

■ Even if a contract to procure insurance was formed between defendant and the Burgesses, a necessary condition precedent to performance by defendant was the completion of an insurance application by the Burgesses. Under Virginia law, an insurance application is a necessary requirement to complete a contract of insurance. Code of Virginia § 38.1–330; Hayes v. Durham Life Insurance Co., 198 Va. 670, 96 S.E.2d 109. Furthermore, under Virginia law the Regulation Z disclosure statement could not be considered an insurance application because all insurance application forms must be approved by the State Corporation Commission before they are used for that purpose, Code of Virginia § 38.1–342.1, and the Regulation Z disclosure statement has not met that requirement. Thus, even if defendant had agreed to procure insurance, it could not have performed its agreement without the completion of an application by the Burgesses. Since the Burgesses did not complete an insurance application, any contract to procure insurance was impossible for defendant to perform by the Burgesses' failure to fulfill a condition precedent to performance.

Third, does the Truth-In-Lending Act and its accompanying regulation, Regulation Z, require a lending institution to disclose that it will procure credit life insurance and to agree to procure or obtain such insurance?

■ The purpose of the Truth-In-Lending Act and its accompanying regulation, Regulation Z, is to insure that a borrower is aware of the real and comparative cost of credit prior to entering into a contractual relationship with a lender. Truth-In-Lending Act,

15 U.S.C.A. § 1601. It is not the purpose of the Act to require a lending institution to procure credit life insurance or to agree to procure credit life insurance. The separate paragraph on the disclosure statement involving credit life insurance is directly in line with the Act's disclosure purpose since this separate statement shows the borrower that credit life insurance is not required for the loan, is not included in the loan and must be acquired in a separate transaction from the loan transaction. Since the disclosure statement's function is to exchange information and to give both parties notice prior to the contractual relationship, the disclosure statement in and of itself cannot constitute a contractual relationship, and any such agreement must be a result of an offer and acceptance subsequent to the disclosure. Truth-In-Lending Act, 15 U.S.C.A. § 1605(b), Regulation Z, 12 C.F.R. § 226.-4(a)(5)(ii). If the disclosure statement did in fact create a contract, the purpose of the Truth-In-Lending Act would be thwarted and such a contract would be illegal and unenforceable. As Mr. Grimm stated in his deposition, the insurance was not required to obtain the loan nor did the defendant have any right to demand that the insurance be kept in force if the borrowers applied for and obtained coverage. Therefore, since the lending institution did not require the credit life insurance it was under no duty to procure the insurance or to agree to obtain it.

This court, therefore, finds that plaintiff's complaint is without merit for it was impossible for defendant to form a contract of insurance or a contract to write insurance, and there is no evidence that a contract to procure insurance was formed. Furthermore, neither Regulation Z nor Virginia Code § 38.1–482 could have created a contract of insurance or a contract to procure insurance.

Accordingly, this court dismisses plaintiff's complaint and it is so adjudged and ordered. Each party shall bear their own costs.