**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

No. 07-2668

JOHN L. MCGILL,

Plaintiff, Appellant,

v.

MINNESOTA MUTUAL LIFE INSURANCE COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before

Lynch, Chief Judge,

O'Connor,* Associate Justice (Ret.),

and Torruella, Circuit Judge.

Alan J. Pierce, with whom Hancock & Easterbrook, LLP, was on
brief for appellant.
Melissa Lang, with whom Timothy Bliss was on brief for
appellee.

June 30, 2008

---

* The Hon. Sandra Day O'Connor, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**O'CONNOR, <u>Associate Justice (Retired)</u>**. Appellant John McGill appeals the district court's grant of summary judgment against him on his claims that his insurer breached its insurance contract and its fiduciary duty, and engaged in misrepresentation and fraud. Because the insurer never contracted to pay McGill disability benefits until age 65, we affirm.

I.

As this case arises on summary judgment, we state the facts in the light most favorable to appellant. <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 256-57 (1986); <u>Maldonado-Denis v. Castillo-Rodriquez</u>, 23 F.3d 576, 581 (1st Cir. 1994).

John McGill was employed by Eastern Shore Printing Corporation of Virginia, later renamed the Interflex Group ("Interflex"). In May of 1992, McGill spoke with a broker, who sold insurance through appellee Minnesota Mutual Life Insurance Company ("MML"), about obtaining disability insurance.

McGill applied for insurance that would have provided benefits, if disabled, until he reached the age of 65. On his application, he included both his home address and his work address, and indicated that he wished MML to send correspondence to his work address.

After he submitted his application, MML went through standard procedures to determine coverage: It sent a nurse to

his office to perform a physical, and obtained McGill's medical records. On the basis of that information, MML chose not to issue a policy that would provide benefits until McGill reached 65. Instead, MML countered the offer McGill made in his application by writing on the application a limited period of five years of benefits. On July 2, 1992, MML issued a policy containing the limited term of five years and sent it to McGill at his work address, as McGill had requested.

The human resources director at Interflex received and filed a copy of the policy, and Interflex issued checks to pay McGill's premiums. McGill has testified that he never saw the policy that MML issued, and was unaware that the policy's terms differed from his initial application.

In April of 1994, McGill was diagnosed with obstructive sleep apnea. More than a year later, the condition had become so severe that he was unable to continue working. He entered into a severance agreement with Interflex, and thereafter filed a claim for disability benefits with MML. It was only in 1996, while discussing this claim with MML, that McGill learned that the policy had been issued with a five-year benefit cap.

MML paid McGill benefits under the policy for five years and then terminated the payments.

McGill filed the instant lawsuit in 2005, alleging breach of contract, misrepresentation, fraud, and breach of fiduciary duty. The district court held that McGill's policy did not provide benefits until age 65, and granted summary judgment to MML.

## II.

McGill claims that he did not personally receive the terms of the insurance contract, that his application should govern the terms of the policy, and that he never consented to MML's provision of a five-year benefit cap.

We must take as fact that McGill neither saw nor read the policy terms. Nevertheless, the July 2, 1992 policy containing the five-year limitation was sent to McGill at his office address at MML as he requested. There is no dispute that MML mailed a copy of the July, 1992 policy and that McGill's employer, Interflex, retained a copy in its files. McGill testified that he did not ask the broker who sold him the insurance policy to show him the policy. He never inquired of his employer whether the policy had been delivered.

Even so, McGill claims that MML's alteration cannot constitute the terms of the policy. Under Virginia law, "[n]o alteration of any written application . . . shall be made by any person other than the applicant without his written consent."

- 4 -

Va. Code § 38.2-3511. McGill claims that MML's handwritten changes to his application were made without his consent, and were thus ineffective and could not bind him.

We agree that under Virginia law, it appears McGill could not be bound by MML's handwritten changes. The question we must resolve in this case, however, is not whether McGill was bound by the policy changes, but whether MML was bound to provide disability benefits until McGill reached age 65. The conclusion to be drawn from this statute is not that MML must be held to the terms for which McGill initially applied, but that McGill's initial offer to purchase insurance was rejected by MML's counter-offer. If McGill never accepted that counter-offer, under Virginia law, no meeting of the minds occurred and no contract was formed.

Virginia law establishes that an application for insurance is not itself a contract. Instead, "an application for insurance is merely an offer to enter into a contract. The insurance policy is the contract between the parties." Smith v. Colonial Ins. Co. of Cal., 515 S.E.2d 775, 777 (Va. 1999); see also Hayes v. Durham Life Ins. Co., 96 S.E.2d 109, 111 (Va. 1957) ("The application for insurance is a mere proposal for a contract on the part of applicant. It is one of two prerequisites in the creation of the contract, the other consisting of the acceptance

- 5 -

of the offer. No contractual relationship exists between the parties until acceptance by the insurer. . . .").

McGill's application for insurance, then, did not by itself establish coverage; he offered to purchase coverage at a given price. In order to form a contract, McGill must demonstrate that the insurer accepted his offer. There is no evidence that the insurer did so. Instead, the record unequivocally demonstrates that MML responded to McGill's application with a more limited counter-offer.

The undisputed facts establish that MML did not accept McGill's initial offer to buy coverage until age 65. At most, MML proceeded on the assumption that it was required to provide no more than five years of disability benefits. McGill has not established that MML agreed to provide coverage for a longer period.

III.

Because the district court properly granted summary judgment to MML on the grounds that McGill's insurance contract did not provide benefits until age 65, we need not rule on MML's alternate grounds for summary judgment.

AFFIRMED.