Argued January 4, reversed March 27,
petition for rehearing denied April 24, 1979

# DAVID M. SCOTT CONSTRUCTION
## CORP., *Respondent,*
### *v.*
# FARRELL, *Appellant.*
## (TC 76-11-292, SC 25620)

592 P2d 551

John C. Anicker, Jr., Oregon City, argued the cause and filed the briefs for appellant.

Robert D. Herndon, of Ringle & Herndon, Gladstone, argued the cause and filed the brief for respondent.

Before Denecke, Chief Justice, and Tongue, Bryson and Linde, Justices.

TONGUE, J.

**TONGUE, J.**

This is a suit for specific performance of an earnest money agreement for the sale of land. On October 17, 1977, the trial court entered a "Decree" in favor of plaintiff which provided that plaintiff, as the purchaser, was to deposit in escrow the balance of the purchase price and that these monies were to be paid to defendant upon the execution by him of a deed, which he was directed by the court to execute. The decree also included the further provisions that:

"4. The court shall retain jurisdiction of this matter until the escrow has been closed, and should defendant fail to execute the deed and other escrow instructions, plaintiff may apply to the court for a supplemental decree transferring the deed to the above described property to plaintiff by said decree."

"* * * * *"

"6. Pursuant to the stipulation of the parties that it was not necessary for either of the parties to present evidence on the question of attorneys fees, the court directs plaintiff's counsel to present to the court for its examination his time records in this case, and the court reserves a decision on the awarding of attorneys fees until reviewing the same."

On November 12, 1977, within the 30-day period for appeal from that decree, plaintiff filed a Motion for Supplementary Relief, alleging that although he had paid into escrow the money required under the decree, defendant had refused to execute a deed conveying clear title to plaintiff, but had only executed a deed transferring title subject to a sewer assessment of approximately $39,000. The motion asked that the court enter a supplemental decree conveying title free and clear of all such liens and directing the escrow company to disburse such monies as necessary to satisfy such liens.

A hearing was held on that motion on December 1, 1977. Meanwhile, no appeal had been taken by defendant from the decree of October 17, 1977. A "Supplemental Decree" was entered on December 13, 1977,

again directing defendant to convey the property and also providing that:

"2. This decree shall act as the deed and any title company closing this transaction shall disburse from the proceeds of sale sufficient funds to pay in full any sewer assessment to Clackamas County Service District No. 1, together with all other liens and encumbrances which are the responsibility of defendant under the earnest money agreement enforced by the original decree."

"\* \* \* \* \*"

"4. That plaintiff is awarded judgment against defendant for the sum of $800.00 on account of attorneys fees together with his actual costs and disbursements incurred herein."

On December 29, 1977, defendant filed a notice of appeal from that "Supplemental Decree". In his brief as appellant, however, defendant does not confine his appeal to assignments of error relating to the entry of the Supplemental Decree. Defendant also assigns as error the overruling of his demurrer to plaintiff's complaint, and the trial court's decree of a cash sale, among other alleged errors.

In response, plaintiff contends that the decree of October 17, 1977, was a "final appealable order"; that defendant took no appeal from that decree within the 30-day period required by ORS 19.026, but appealed only from the subsequent "Supplemental Decree," and that for these reasons defendant can be heard only on his assignment of error relating to the entry of that "Supplemental Decree," but not on his remaining assignments of error, which relate to the entry of the decree of October 17, 1977.

*The decree of October 17, 1977, was not a final and appealable decree.*

ORS 19.010(2) provides that:

"(2) For the purpose of being reviewed on appeal the following shall be deemed a judgment or decree:

"(a) An order affecting a substantial right, and

which in effect determines the action or suit so as to prevent a judgment or decree therein."

"* * * * *"

ORS 19.026(1) requires that (with some exceptions) a notice of appeal must be filed "within [thirty] days after the entry of the judgment appealed from."

Whether the decree of October 17, 1977, was a final and appealable decree, so as to require dismissal of defendant's appeal from that decree as not filed within the time required by statute, is a difficult question.

As stated in 1 Freeman on Judgments 45, § 27 (1925):

"No hard-and-fast definition of 'final' judgment, applicable to all situations, can be given since its finality depends somewhat upon the purpose for which, and the standpoint from which it is being considered, since it may be final for one purpose and not for another.* * *"

As a matter of general policy, this court has disapproved the practice of piece-meal appeals for the reason that efficient judicial administration will be better served if a case is required to proceed to final judgment before any appeal is permitted. *See, e.g., Lulay v. Earle v. Wolfer,* 278 Or 511, 514, 564 P2d 1045 (1977); *Dlouhy v. Simpson Timber Co.,* 247 Or 571, 575, 431 P2d 846 (1967). *See also Coldiron v. McKenzie,* 260 Or 237, 241, 490 P2d 976 (1971), and Freeman, *supra,* at 70, § 44.

We have said, as in *Moran v. Lewis,* 274 Or 631, 634, 547 P2d 627 (1976), that "[o]rders are not appealable until the controversy is completely and finally settled in the trial court." In that case we recognized, however (at 634), that "[t]here are exceptions to this policy."

We have also, as in *Wagner v. Columbia Hospital Dist.,* 259 Or 15, 18, 485 P2d 421 (1971), quoted with approval the following rule as stated in *Winters et al v. Grimes et al,* 124 Or 214, 216, 264 P 359 (1928):

"One of the tests in determining whether a judgment or decree is final is: 'If no further action of the

court is required to dispose of the cause, it is final.' Other tests are: Is the order or decree one which determines the rights of the parties so that no further questions can arise before the court rendering it, except such as are necessary to be determined in carrying it into effect, or is the judgment or decree 'one which concludes the parties as regards the subject-matter in controversy in the tribunal pronouncing it'?"

*See also Lulay v. Earle v. Wolfer, supra,* 278 Or at 514.

■ To the same effect, as stated in Freeman, *supra,* at 63:

"The general rule 'as deducible from the authorities, is that if anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the judgment is interlocutory only.' * * *"

On the other hand, as also stated in Freeman, *supra,* at 55:

"A judgment or decree which determines all the equities or the substantial merits of the case is final for purposes of appeal though further proceedings may be necessary in the execution of it or some incidental or dependent matter may still remain to be settled. * * *"

To the same effect, *see Lyon v. Mazeris et al,* 170 Or 222, 230, 132 P2d 982 (1943) and *Hall et al v. Pierce, Bone,* 210 Or 152-54, 307 P2d 292, 309 P2d 997, 309 P2d 998 (1957).

■ The application of these rules to the facts of this case presents a difficult question. We believe, however, that in a close case such as this, any doubts should be resolved against such a result as would bar the appellant from an appeal.

The complainant in this case sought a decree of specific performance and a judgment in the sum of $7,500 for attorney fees. In the decree of October 17, 1977, the trial court "retain(ed) jurisdiction of this

matter until the escrow has been closed" and stated that if defendant failed to execute the deed or escrow instructions "plaintiff may apply to the court for a supplemental decree transferring the deed to the above-described property to plaintiff by said decree." That decree also "reserve(d) a decision on the awarding of attorneys fees until reviewing the same."

In addition, it was implicit from these terms of that decree that the court also reserved jurisdiction to determine any controversies relating to the amount payable to the defendant, as the seller, from the funds held in escrow, including controversies relating to payment of taxes, liens, and any other items payable in order that clear title to the property might be conveyed to the plaintiff.

It may be that a reservation of jurisdiction to enter a supplemental decree transferring title to plaintiff, when taken alone and in another context, could properly be considered to be nothing more than a provision for "further proceedings * * * necessary in the execution of (the decree)." It may also be that a reservation of jurisdiction to decide whether or not to award attorney fees and the amount thereof, when taken alone and in another context, would properly be considered to be a reservation of jurisdiction over an "incidental or dependant matter" within the purposes of the rules as stated above. In addition, it may be that the possibility of unforeseen controversies relating to a determination of the amount payable under a decree may not, when taken alone and in another context, be sufficient to extend the time for appeal from an otherwise final judgment or decree.

We believe, however, that the combined effect of these reservations, when coupled with an express reservation of jurisdiction until the closing of the escrow and when considered in the context of this case, was such as to bring this case within general rule to the effect that a decree is not final and appealable "if anything further in the nature of judicial action on the

[569]

part of the court is essential to a final determination of the rights of the parties."[1]

■ For all of these reasons we hold that the decree of October 17, 1977, was not a final decree so as to require dismissal of defendant's appeal for failure to file a notice of appeal within thirty days from the entry of that decree. On the contrary, we hold that the subsequent decree entered by the court on December 13, 1977, although entitled "Supplemental Decree" was the final and appealable decree in this case. Because defendant filed a notice of appeal within thirty days from the entry of that decree, the defendant is entitled to assign as error any and all errors arising during the entire course of the proceedings in the trial court, including defendant's assignment of error that the trial court erred in overruling defendant's demurrer to plaintiff's complaint.

Because, however, of the difficulty in cases such as this in determining whether what may appear on its face to be a final decree is a final and appealable decree, despite a reservation of jurisdiction to enter a further decree relating what may or may not be

---

[1] As in *Moran v. Lewis, supra,* at 34, we recognize that there may be exceptions to this rule. This is not a case such as *Hall et al v. Pierce, Bone,* 210 Or 98, 307 P2d 292, 309 P2d 997 (1957), or *Anderson v. Hurlbert et al,* 109 Or 284, 219 P 1092 (1923), the two cases relied upon by plaintiff. *Hall* was a suit to establish a resulting trust. The decree appealed from declared the existence of such a trust, but ordered an accounting to determine the amount payable to plaintiff. This court held (210 Or at 152-54) that decree to be a final and appealable decree, citing its previous decision to the same effect in *Lyon v. Mazeris et al,* 170 Or 222, 132 P2d 982 (1943). *Lyon* had held (at 233-34) that unless the decree in such a case were appealable defendants would be deprived of title and possession of the property in dispute for a long period before the entry of the decree on the accounting. We need not decide in this case whether or not such "accounting" cases should be considered as an exception to the general rule as previously stated. This is not such a case and the reasons for recognizing the exception in such a case have no proper application in this case.

Similarly, this is not a case such as *Anderson,* which involved a decree of strict foreclosure permitting the vendee sixty days to redeem. The vendee appealed from that decree. The vendor contended that the appeal was premature because the sixty days had not expired. This court held (109 Or at 291) that decree to be a final and appealable decree despite its provision allowing sixty days for redemption.

[570]

regarded as an "incidental matter," attorneys would be well advised, out of an abundance of caution, to file a notice of appeal from both decrees in such cases.

*Defendant's assignments of error.*

As previously stated, this is a suit for specific performance of an earnest money agreement for the sale of land. A copy of that earnest money agreement was attached to plaintiff's complaint, and provided for the sale by defendant to plaintiff of land in Clackamas County for the sum of $72,000, with the balance after the down payment payable under the following "terms of payment":

"(1) At closing, $5,000 note will be replaced with cash. Balance of $51,120 to be paid in five (5) equal, annual payments, plus interest at eight (8) percent payable annually.

"(2) Payment dates to be January 15, 1977, January 15, 1978, January 15, 1979, January 15, 1980 and January 15, 1981.

"(3) If subordination to a first mortgage is required by a financial institution, Seller agrees to do so, at terms mutually agreeable to both parties."

Defendant's first assignment of error is that the trial court erred in overruling defendant's demurrer, which was based on the contention that the earnest money agreement was not enforceable as written because the subordination provision quoted above was too indefinite.

In *Smith v. Vehrs,* 194 Or 492, 499, 242 P2d 586 (1952), this court stated:

"It is a well-established rule of law in this state that equity will not decree specific performance unless the contract is definite, certain and complete. The court cannot make a contract for the parties, nor can it make clear that which is left in doubt and uncertainty. [Citing cases]"

*See also Phillips v. Johnson,* 266 Or 544, 555-56, 514 P2d 1337 (1973); *Landura Corp. v. Schroeder,* 272 Or 644, 651, 539 P2d 150 (1975).

[571]

It is also true, as stated in 11 Williston on Contracts 814, § 1424 (3rd ed 1968) that:

> "If there is sufficient intent expressed to make a legally valid contract, a court of equity can make certain by its decree, within reasonable limits, *subordinate details of performance* which the contract itself does not state." (Emphasis added)

Williston also comments (at 844-45), quoting with approval from a court decision:

> "* * * [T]he mere fact that a contract, *definite in material respects,* contains some terms which are subject to further negotiations between plaintiff and defendant will not bar a decree for specific performance, if in the court's discretion specific performance should be granted.* * *" (Emphasis added)

*See also Southworth v. Oliver,* 284 Or 361, 587 P2d 994 (1978); *Seal v. Polehn,* 284 Or 259, 586 P2d 345 (1978).

It follows that the important distinction to be made is between the "material" terms of a contract, which must be agreed upon in sufficiently definite terms before there exists a valid contract which may be enforced by a decree of specific performance, and the non-material terms or "subordinate details of performance."

The earnest money agreement in this case provided that *if* subordination to a first mortgage is required by a financial institution, "Seller agrees to do so, at terms mutually agreeable to both parties."[2] We need not decide, however, whether, as a matter of law, this constitutes such indefiniteness on a material term of a contract so as to make the overruling of defendant's demurrer improper, because we conclude upon an examination of the evidence adduced at trial that plaintiff was not entitled to specific performance under the facts of this case.

---

[2] An annotation in 26 ALR 3d 855, 860 (1969) cites cases holding that subordination provisions of land sales contracts are material provisions and that specific enforcement of contracts will be denied when such provisions are indefinite. *See also* 11 Williston on Contracts 816, n. 10, § 1424 (3rd ed 1968).

The earnest money agreement contemplated that the parties would subsequently enter into a land sale contract. The contract proposed by the plaintiff purchaser and deposited by him in escrow at the date set for closing (July 30, 1976) would have required the defendant vendor to subordinate his interest to *any* mortgage plaintiff obtained, regardless of the amount or terms of that mortgage. Defendant rejected this proposal.

In October of 1976 defendant informed plaintiff that defendant would be willing to agree to any of the following alternatives:

1. Defendant would sell the property for cash;

2. Defendant would sell the property on a standard form contract without a subordination provision;

3. Plaintiff would provide defendant with additional security for the subordination agreement; or

4. Plaintiff would personally guarantee the contract.

Plaintiff rejected all four alternatives.

On November 4, 1976, defendant's attorney sent plaintiff's attorney a letter which summarized the four alternatives and stated that "[b]ecause of the inability to reach an agreement in accordance with the above, Mr. Farrell [defendant] regards the earnest money agreement as terminated * * *."[3] On November 22, 1976, plaintiff filed this suit for specific performance of the earnest money agreement.

On May 4, 1977, the day before the original trial date set in this suit, plaintiff offered to enter into a contract with defendant pursuant to the same terms and conditions set forth in the earnest money agreement, but *without* any subordination provision, as per defendant's second alternative, above. Defendant rejected this offer.

---

[3] That letter was offered in evidence "under the rule," over defendant's objection. Defendant's attorney then testified that he "wrote" the letter to defendant's attorney, who acknowledged its receipt by a letter received in evidence. Both letters were referred to in the "Summary of Facts" of appellant's brief, which plaintiff "accepts" in its brief as respondent.

At the trial as later held on September 15, 1977, plaintiff stated, under questioning by the court and apparently for the first time, that he was ready and able to pay defendant cash for the property (as per defendant's first alternative above). Defendant at that time, however, was unwilling to proceed with a cash sale.

This does not end the inquiry, however, because the trial court's decree of a cash sale, if proper, would have the effect of making irrelevant the parties' failure to agree on the terms of subordination.

Defendant assigns the trial court's decree of a cash sale as error. Defendant contends that in this case, unlike in *Phillips v. Johnson, supra,* the parties did not bargain for a cash sale. We agree.

In *Phillips,* the provisions of the earnest money agreement relating to foreclosure and other security provisions were held to be so indefinite as to be unenforceable. That agreement, however, expressly conferred upon the purchaser the right to pay the entire purchase price in cash and required the seller to accept payment in cash, instead of by installment payments over a term of years. Because of that provision of the earnest money agreement, this court held in *Phillips* (at 557-59) that a court of equity could provide a remedy in such a case by the entry of a decree providing for such a cash payment, thereby rendering irrelevant the indefinite contract provisions.

The earnest money agreement in this case, however, neither confers upon the purchaser the right to pay the entire contract price in cash nor requires the seller to accept such a cash payment. Instead, this contract expressly provides that the balance of $51,120 is "to be paid in five (5) equal, annual payments," beginning in 1977 and ending in 1981.

The defendant vendor may well have had good reasons, for tax purposes or otherwise, to prefer that

[574]

payments be made by installments over a period of five years, rather than a cash payment in full. He may also have had good reasons to offer to accept a cash sale as an alternative in October of 1976 in the course of negotiating an agreement on subordination. Defendant may also have had good reasons, however, to reject such an offer when made by plaintiff nearly a year later and at trial in a suit brought against defendant by plaintiff to enforce the original earnest money agreement. In any event, and for reasons previously stated, we conclude that defendant was not required to accept that tardy offer to pay cash and that the trial court erred in decreeing a cash sale.

The question remains, however, whether this case should be remanded to the trial court for entry of a decree of specific performance directing defendant to sell plaintiff the land on a standard form contract on terms as set forth in the earnest money agreement but *without* any provision for subordination. Such a decree, if proper, would render irrelevant both the parties' failure to agree on the terms of a subordination provision and also their failure to agree on a cash sale.

■  We conclude, however, that under the facts of this case such a decree would be improper. Not only did the plaintiff reject the proposal made by defendant in October of 1976 during the course of negotiations that plaintiff waive the subordination provision by purchasing the land on an installment contract *without* such a provision, but plaintiff thereafter brought this suit to enforce the contract *with* the subordination requirement. If this court were to hold that the offer made by defendant over six months later, and the day before the original trial date in this case, constituted such a waiver of the benefit of the subordination provision as to make proper a decree of specific performance, such a holding would, in effect, grant plaintiff a free option on the property, allowing him to speculate on the value of the land "going up." Under

[575]

these facts and circumstances, we decline to enter such a decree.

For all these reasons, we hold that the trial court erred in entering a decree of specific performance in this case.[4]

Reversed.

---

[4] Because of the basis upon which we decide this case, it is not necessary to consider or decide defendant's remaining assignments of error.