Submitted on record and briefs May 16, affirmed in part, reversed in part, and remanded August 18, 1980

BRADLEY,
*Appellant,*
*v.*
OREGON TRAIL SAVINGS &
LOAN ASSOCIATION,
*Respondent.*

(No. A7703 03760, CA 15155)

615 P2d 263

[872]

Ivan J. Vesely and James Scudder, Portland, filed the brief for appellant.

Barbee B. Lyon and John E. Frohnmayer, and Tonkon, Torp & Galen, Portland, filed the brief for respondent.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

BUTTLER, J.

**BUTTLER, J.**

Plaintiff failed to plead further after the trial court sustained defendant's demurrer to the fourth amended complaint in this action. Plaintiff appeals from the resulting judgment, contending that the sustaining of the demurrer was error. Plaintiff also appeals from the trial court's "supplemental judgment" which awarded attorney's fees to defendant.[1] We reverse and remand the first judgment and vacate the supplemental judgment.

In 1975, plaintiff and her husband obtained a loan from defendant and executed a mortgage under which plaintiff and her husband were mortgagors and defendant was mortgagee. The disclosure statement which defendant provided plaintiff and her husband, pursuant to the Federal Truth in Lending Act (15 USCA § 1601 *et seq.)* and implementing regulations, contained the following language:

> "MORTGAGE CANCELLATION LIFE INSURANCE OR DISABILITY INSURANCE is not required. No charge is made and no such insurance is provided. If the BORROWER CHECKS the appropriate box below, we will submit an application on behalf of the Borrower requesting coverage at the price quoted."

The "appropriate box" was checked indicating the Borrower desired the insurance, and the disclosure form was signed by plaintiff's husband as "Borrower" and by plaintiff as "Borrower's Spouse." At the top of the form, however, both are named as "Borrowers," and the complaint alleges, and the mortgage attached to the complaint indicates, that plaintiff and her husband were "joint borrowers," that they were joint mortgagors and were jointly and severally liable on

---

[1] The attorney's fees were sought pursuant to a provision of a mortgage under which the mortgagors agreed to pay reasonable attorney's fees in the event of any "action or proceeding which Mortgagee may find expedient * * * to protect the lien hereof * * *." We do not consider in this opinion whether this action is one permitting an award of attorney's fees pursuant to that instrument.

the note secured by the mortgage. Plaintiff's husband died in 1976. Plaintiff then "applied" to defendant to satisfy the unpaid balance of the loan with proceeds from the mortgage cancellation insurance on her husband's life and to cancel the mortgage. She "was informed by defendant that no such insurance coverage existed nor had such insurance been applied for by defendant."

The essence of plaintiff's claim in this action is that defendant agreed to apply for the mortgage cancellation life insurance, and that plaintiff sustained various damages because of defendant's failure to do so, including damages equal to the principal balance and interest which remained payable on the loan as of the time of plaintiff's husband's death.

Plaintiff's original and first three amended complaints were brought in her individual capacity as widow and surviving owner of the real property. Defendant demurred to each of those complaints on the grounds, among others, that plaintiff, as an individual, does not have legal capacity to sue and that any cause of action which might exist by reason of defendant's failure to procure the insurance belonged to the estate of plaintiff's husband. The demurrers were sustained. In her fourth amended complaint, plaintiff changed the caption of her pleading to indicate that she was suing in her capacity as personal representative of her husband's estate, as well as in her individual capacity. She also added an allegation that she was the duly appointed personal representative of the estate. The operative allegations of the complaint are set forth in the margin.[2] Defendant demurred again on essentially the same grounds, and that demurrer was sustained.

[2] "For a first cause of action plaintiff alleges:

"* * * * *

[874]

"Prior to the accidental death of plaintiff's husband on November 23, 1976, plaintiff and her husband, Richard D. Bradley, were joint owners of the real property at Route 1, Box 195, Troutdale, Oregon, and joint borrowers thereon from defendant as alleged herein. For purposes of the mortgage cancellation life insurance herein, plaintiff's husband, Richard D. Bradley, was the insured borrower and plaintiff was, and now is, the beneficiary of said insurance. Defendant's failure, as hereinafter alleged, to obtain mortgage cancellation insurance protection for plaintiff, was solely due to the negligence of its agents, and defendant is estopped to deny plaintiff's standing as said beneficiary.

"III

"Defendant is required to comply with the Consumer Credit Protection Act, as amended (15 U.S.C., Section 1601 et seq), and specifically Title I thereof (Truth in Lending Act) while doing business as a lending institution as complained of herein. * * *

"IV

"On or about February 18, 1975, plaintiff and her now deceased husband, Richard D. Bradley, applied for a loan on their home at Route 1, Box 195, Troutdale, Oregon, which loan subsequently was made to plaintiff and her said husband by defendant on or about May 1, 1975, in the amount of $16,800.00, and secured by a note and mortgage. Plaintiff's copy of said note and mortgage is attached hereto as 'Exhibit C, 1-3' and incorporated herein as though fully set forth.

"Said Truth in Lending Act and said Regulation Z required defendant to make a disclosure statement of said real estate loan to plaintiff and her husband. Said disclosure statement is attached hereto as 'Exhibit A', and is incorporated herein as though fully set forth.

"In further compliance with said Act and Regulation, defendant disclosed to plaintiff the cost of mortgage insurance on said loan, and plaintiff and her husband after receiving said disclosure, gave a specifically dated and separately signed affirmative written indication of their desire to have mortgage cancellation life insurance on said loan on the form provided by defendant (Exhibit A). Defendant further promised to submit an application on behalf of plaintiff and her husband requesting coverage of said insurance (Exhibit A). Plaintiff is informed and believes and, therefore, alleges that the credit life insurance available in connection with defendant's mortgage loans was a group program which required no medical examination or other formality, and that plaintiff's husband was insurable thereunder.

"V

"Defendant failed to notify plaintiff and/or her husband that said application for insurance had not been submitted and that insurance

was not in effect. Plaintiff and her husband reasonably relied on defendant's representations and upon the requirement of said Truth in Lending Act that defendant must perform its disclosures as shown in Exhibit A.

"Thereafter, upon plaintiff's husband's said death, plaintiff applied to defendant for a satisfaction of mortgage and at that time was informed by defendant that no said insurance coverage existed nor had such insurance been applied for by defendant.

"* * * * *

"VI

"Plaintiff has been duly appointed Personal Representative of the Estate of Richard Bradley, deceased.

"For a second cause of action, plaintiff alleges:

"I

"Plaintiff realleges and incorporates by reference as if here fully set forth Paragraphs I, II, IV and VI of Plaintiff's First Count of the Fourth Amended Complaint herein.

"II

"Defendant failed to submit said application for said mortgage insurance for plaintiff and her husband, in accordance with said agreement heretofore alleged. Plaintiff and her husband relied on defendant's said promise to submit (and secure) plaintiff's and her husband's application for mortgage insurance (or to notify plaintiff and her husband of a failure to secure said insurance, if appropriate). When plaintiff's husband died on November 23, 1976, defendant refused, on demand, to cancel plaintiff's said mortgage, thereby damaging plaintiff in the amount of $16,542.50, together with the return of payments of $188.00 per month defendant has required plaintiff to make since plaintiff's husband's death. Plaintiff is entitled to interest on the total sum hereinabove mentioned since November 23, 1976.

"III

"Plaintiff is entitled to a reasonable attorney's fee and $7,200 is a reasonable attorney's fee, together with costs herein.

"For a third cause of action, plaintiff alleges:

"I

"Plaintiff realleges and incorporates by reference as though here fully set forth Paragraphs I, II, IV and VI of plaintiff's First Cause of Action, and Paragraphs II, III and IV of plaintiff's Second Cause of Action, all part of the amended complaint herein.

[876]

On June 25, 1979, the court entered a judgment which dismissed plaintiff's[3] "cause of action," and stated "that defendant's motion for attorney's fees shall be set for hearing on the regular motion calendar." Plaintiff filed her notice of appeal from that

"II

"Defendant had a duty to submit an application for plaintiff and her husband for said mortgage cancellation life insurance. Said duty was established by either contract of the parties or by the said Truth in Lending Act, or both ways. Defendant further had a duty to notify plaintiff and her husband if defendant was unable to comply with said foregoing duty for any reason whatsoever. Twenty-one (21) months elapsed between defendant's said promise to submit said application and plaintiff's husband's death. In this period of time, defendant knew, or should have known, that it had failed in said duties to plaintiff and her husband.

"III

"Defendant's intentional or reckless failure to perform its duties as hereinabove alleged entitled plaintiff to punitive damages, and $50,000.00 is a reasonable amount to be allowed plaintiff as punitive damages.

"IV

"Defendant's refusing to cancel the mortgage herein upon plaintiff's husband's death proximately caused plaintiff great mental suffering, and plaintiff is entitled to $10,000.00 damages for said suffering, together with the alleged special damages of $16,542.50 and the $188.00 per month since November 23, 1976, all together with interest from said date, and said attorney's fee of $7,200, and her costs herein.

"* * * * *."

Attached as Exhibit A to the complaint was a copy of the disclosure statement as filled out and signed by the parties.

[3] The demurrer to the fourth amended complaint omitted from the caption the personal representative as a plaintiff, apparently treating the case as if the personal representative had not been joined on the apparent theory that a party may not be joined in an action which was not properly commenced initially. All subsequent papers filed in the proceeding omitted the personal representative from the captions, including the notice of appeal. Because we conclude that the widow did have capacity to sue, we treat the personal representative as having been joined as a party plaintiff. Accordingly, either the complaint has not been dismissed as to the personal representative, or the personal representative is a party to the appeal. However, the caption in this court names only the widow, so we will refer to her as the plaintiff and the personal representative as the personal representative.

judgment on July 24, 1979. The trial court entered its supplemental judgment for attorney's fees on August 15, 1979, and plaintiff filed a notice of appeal from the supplemental judgment on September 14, 1979.

The initial question is whether we have jurisdiction over the appeal from the first judgment. Defendant argues that we do not, because that judgment left the issue of attorney's fees undecided and was therefore not a final order disposing of all issues in the case. Consequently, according to defendant, plaintiff's notice of appeal from the first judgment was premature, and her later notice of appeal from the supplemental judgment did not specify that the first judgment as well as the supplemental judgment was the subject of the appeal. Plaintiff's argument is essentially the converse of defendant's: she reasons that the original judgment was final and appealable as of the time it was entered, that she took an appeal from it, and that once her notice of appeal had been filed jurisdiction over the matter was in this court, and therefore the trial court had no authority to award attorney's fees. ORS 19.033.

Plaintiff's argument is in accord with our decision in *Bank of Oregon v. Hiway Products, Inc.,* 41 Or App 223, 598 P2d 318 (1979), where we stated:

"Finally, plaintiff assigns as error the award of attorney fees in a supplemental decree entered after plaintiff's notice of appeal to this court had been filed. The trial court, in its original decree, explicitly left for later determination the issue of attorney fees to be awarded to Hiway.

"ORS 19.033(1) provides, in pertinent part:

" 'When the notice of appeal has been served and filed * * *, the Supreme Court or the Court of Appeals shall have jurisdiction of the cause, * * * but the trial court shall have such powers in connection with the appeal as are conferred upon it by law.'

"Here, the action of the trial court was not within the limited range of matters relating to appeal listed in *Gordon Creek Tree Farms v. Layne, et al,* 230 Or 204,

209, 358 P2d 1062, 368 P2d 737 (1961). *See also Valley Pipe Co. v. City of Albany,* 215 Or 666, 300 P2d 411, 303 P2d 503 (1959). * * *

"* * * * *

"* * * We assume, without deciding, that the supplemental decree in the present case was otherwise correct. It must, however, be reversed as beyond the trial court's jurisdiction with respect to awarding attorney fees once a notice of appeal was filed. * * *" 41 Or App at 231-32.

Defendant suggests that our decision in *Hiway Products* is inconsistent with the Supreme Court's decision in *David M. Scott Construction v. Farrell,* 285 Or 563, 592 P2d 551 (1979). *Hiway Products* was decided after *Farrell* and we find no inconsistency; in fact, the Court in *Farrell* stated that the mere reservation of jurisdiction to determine the question of attorney fees may not, by itself, be sufficient to render a judgment not final. It was the combined reservations in the *Farrell* judgment which led the Court to conclude that there were too many acts for the trial court to perform to treat the judgment as final until the supplemental judgment was entered. Neither is the holding in *Hiway Products* affected by *Shipler v. Van Raden,* 288 Or 735, 608 P2d 1162 (1980), which the Supreme Court decided after defendant's brief in the present case was filed. As it had in the earlier case of *Gorman v. Boyer,* 274 Or 467, 547 P2d 123 (1976), the court in *Shipler* "indicated a preference for awaiting the trial judge's identification of the 'prevailing party' before requiring evidence on the matter of fees," 288 Or at 745, at least in equity cases where attorney's fees are awarded pursuant to contract or to ORS 20.096(1). The court stated in *Shipler* that the better practice is for attorney's fees to be determined after the prevailing party has been identified, but before judgment is entered, so that any award of attorney's fees can be made through the same judgment which determines other issues in the case. *Shipler* does not indicate that the appealability of a judgment is affected by the fact that it does not determine the issue of attorney's fees.

[879]

Defendant contends that we should overrule *Hiway Products.* The difficulty with defendant's position is that if its contention is correct, there is no way plaintiff could appeal the judgment on the demurrer. If it was not appealable and the supplemental judgment did not incorporate the earlier judgment, the only appealable judgment would be the supplemental one awarding attorney fees. Even if we were inclined to overrule *Hiway Products,* which we are not, to avoid the obvious injustice urged by defendant we would construe the supplemental judgment as incorporating the earlier judgment.

■■ The realities of trial practice in this state are such that the prevailing party has substantial control over whether a judgment on other issues will be entered before the issue of attorney's fees is decided or vice versa. The principal benefit of *Hiway Products* and similar holdings is to prevent exactly the type of procedural problems which the present case illustrates. In our view, *Hiway Products* poses a much smaller risk of the "piecemeal appeals" to which defendant argues it is conducive than does the alternative which was followed below of entering piecemeal judgments, which generally should not occur. We adhere to *Hiway Products.* It follows that the first judgment was final and appealable, and we turn to the merits of plaintiff's appeal from it.[4]

■ In her first cause of action, plaintiff bases her claim for relief on defendant's alleged violation of the Truth in Lending Act. The facts in *Burgess v. Charlottesville Savings and Loan Ass'n,* 477 F2d 40 (4th Cir 1973), were materially indistinguishable from those here. The court concluded that the gravamen of the action in *Burgess* was

---

[4] Because the trial court had no jurisdiction to award attorney's fees, the supplemental judgment is vacated. However, the judgment for attorney's fees would of course not be sustainable in any event, given our conclusion that the demurrer was, in part, wrongly sustained and that further proceedings are necessary before a prevailing party can be identified.

"* * * an alleged contract or agreement to procure insurance, the breach of which, under her theory, gave rise to an action both in contract and in tort under the law of Virginia. * * * In no sense can it be said that the plaintiff's cause of action is grounded on the Truth in Lending Act or will be dependent on a construction of that Act. * * *" 477 F2d at 44.

In addition, the court concluded that the conduct of the defendant did not constitute a violation of the Truth in Lending Act. The court stated that

"* * * [i]t is the obligation to disclose, *not the duty of subsequent performance,* towards which the Act is directed. For failure to make disclosure as required, the Act provides its own remedy. Section 1640, 15 U.S.C. Obviously, the defendant complied fully with the Act: It made a full and exact disclosure. The plaintiff does not complain to the contrary. She accordingly has no basis for an action under the Truth in Lending Act for failure to disclose the cost of credit life insurance. * * *" 477 F2d at 45. (Emphasis in original; footnote omitted.)

We agree with the analysis in *Burgess,* and conclude that the demurrer to plaintiff's first cause of action in the present case was properly sustained.

■ However, we conclude that the sustaining of the demurrer as to plaintiff's second and third causes of action was error. Defendant's basic contention is that the facts alleged do not give rise to a right of action in plaintiff in her individual capacity as distinguished from her capacity as personal representative of her husband's estate. We disagree. The complaint sufficiently alleges that plaintiff and her husband were jointly obligated on the loan, that they were joint owners of the property subject to the mortgage, that they were both mortgagors, and that both relied on defendant's promise to procure insurance;[5] that

[5] Defendant argues that plaintiff and her husband could not have relied on the alleged promise, because the complaint shows on its face that

defendant agreed to submit an application on behalf of plaintiff's husband for mortgage maintenance life insurance which, in the event of his death, would be used to satisfy plaintiff's and her husband's remaining indebtedness to defendant; and that, as a consequence of defendant's failure to perform in accordance with that agreement, plaintiff has been injured to the extent of the remaining indebtedness, and has suffered other injuries. In sum, the allegations are sufficient to plead a cause or causes of action for a direct injury to plaintiff in connection with a transaction to which she was a party in her individual capacity.

■ The complaint also states facts sufficient to constitute a cause of action by plaintiff in her capacity as personal representative of her husband's estate. Plaintiff alleges that she and her husband were joint obligors on the loan and joint mortgagors, and that she is personal representative of his estate. These allegations, together with the others described above, are adequate to support an inference that defendant's failure to procure the insurance could result in liability to the estate, both for the unpaid balance of the loan and for any deficiency judgment awarded in a proceeding

they were not making the four dollar monthly payments for mortgage cancellation insurance. Defendant reasons that plaintiff alleges she and her husband were paying $188 monthly. However, the disclosure statement, attached to and incorporated in the complaint, shows that the monthly amortization payment was $138.05, that the premium for the insurance was to be four dollars per month, and the total payment, including loan amortization, insurance premium and real property taxes was to be $192 monthly. We do not find the language of the disclosure statement to be clear enough to establish, as a matter of law, that there was no reliance. It states, as relevant, *"Estimated* total monthly installment *including property taxes, mortgage insurance premium, if any,* will be $192.00(6)

"* * * * *

"(6) This amount is estimated for the first payment only. *It is subject to change due to:*

"* * * * *

"(b) *Changes in property taxes or mortgage insurance premium rates."* (Emphasis added.)

[882]

to foreclose the mortgage. Accordingly, both the widow and her husband's estate would benefit from the insurance and each could be damaged by the failure of defendant to procure. In that sense plaintiff would be a "beneficiary" of the insurance as alleged, although, as defendant points out, defendant would have been the named beneficiary under the policy had it been procured.

■ Defendant also argues that "[t]he complaint improperly mingles purported causes of action in plaintiff's individual capacity with purported causes of action in her representative capacity." As just pointed out, however, both stood to gain by the insurance or to lose by its nonprocurement. The claims of each arise out of the same operative facts, and are so united in interest that they may constitute a joint cause requiring joinder of the parties. See former ORS 13.170.

■ Defendant relies on cases from other jurisdictions, *e.g., Peer v. First Federal Sav. L. Ass'n of Cumberland,* 273 Md 610, 331 A2d 299 (1975), and the trial court's decision in *Burgess v. Charlottesville Savings & Loan Ass'n,* 349 F Supp 133 (1972), remanded, 477 F2d 40 (4th Cir 1973), *supra,* for the proposition that a disclosure statement made pursuant to the Truth in Lending Act cannot "in and of itself * * * constitute a contractual relationship, and any such agreement must be a result of an offer and acceptance subsequent to the disclosure." *Burgess,* 349 F Supp at 141. That contention is beside the point: here the disclosure statement was more than a disclosure; it contained the language that, if the appropriate box was checked, defendant would "submit an application on behalf of the Borrower requesting coverage at the price quoted." On demurrer, that language is sufficient to impose an obligation on defendant.

■ ■ In addition to its general challenges to the complaint, defendant also demurs on the basis of specific purported defects in the pleading of the second

and third causes of action. In both connections, defendant claims that the allegation of plaintiff's husband's insurability was insufficient because it was based on information and belief, and that allegations in a *complaint* cannot be pleaded on that basis. Assuming arguendo that there is any requirement that insurability be pleaded in an action for failure to procure the type of insurance here involved, we are aware of no prohibition against the pleading format used by plaintiff to allege insurability, at least where the challenge is by *demurrer.* Defendant also argues that plaintiff failed to allege any consideration for defendant's agreement to procure insurance. The disclosure statement attached to the complaint shows what the consideration would have been for the insurance, had it been procured. Plaintiff was of course not required to pay the consideration until there was something to pay for. *See Monsantofils v. Gacek Ins. Agency,* 282 Or 3, 6, 576 P2d 789 (1978). Further, plaintiffs alleged a reliance on the promise to their detriment. There is also consideration in that defendants would be assured of repayment of the loan.

 Defendant challenges the third cause of action as improperly joining contract and tort causes. Although there is language in the third cause of action which appears to relate to a contractual duty, the allegations attribute the claimed injuries to tortious activity.

Finally, defendant argues that plaintiff *can* have no tort cause of action in the context of a contractual relationship of the kind alleged. Defendant relies on *Farris v. U. S. Fid. and Guar. Co.,* 284 Or 453, 587 P2d 1015 (1978), where the court held that no tort cause of action could be stated by an insured by reason of a liability insurer's wrongful failure to accept the tender by the insured of the latter's defense in a lawsuit. The basic rationale of the court was that no fiduciary obligation sufficient to establish a predicate

for tort liability existed; because the insurer had declined to act in a representative capacity for the insured, the insured's only cause of action was for the insurer's breach of its contractual obligation to act in such a capacity.

██ ██ It is reasonably clear that both contract and tort theories can be pursued by a plaintiff who alleges that a defendant has failed to procure insurance. *See Monsantofils v. Gacek Ins. Agency, supra.* The contractual relationship which plaintiff alleges existed here was not one of insurer and insured. *Farris* is inapposite.

The demurrer to the first cause of action was properly sustained; it was not as to the second and third causes of action.

The judgment dismissing the complaint is reversed and the case is remanded; the supplemental judgment for attorney's fees is vacated.

Affirmed in part, reversed in part and remanded.