On appellants' application for interlocutory appeal pursuant to ORS 19.225 filed March 10, and respondent's memorandum in response to application for interlocutory appeal pursuant to ORS 19.225 filed March 24, application for interlocutory appeal denied; appeal dismissed October 11, 2006

Marilyn C. PEARSON
and Laura Grandin, individually
and on behalf of all similarly-situated persons,
*Appellants,*

*v.*

PHILIP MORRIS, INC.,
nka Philip Morris USA, Inc.,
*Respondent,*

*and*

PHILIP MORRIS COMPANIES, INC.,
*Defendant.*

0211-11819; A131606

145 P3d 298

David F. Sugerman and Paul & Sugerman, PC, for application.

William F. Gary and Harrang Long Gary Rudnick P.C. for response.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Ortega, Judge.

BREWER, C. J.

## BREWER, C. J.

Plaintiffs seek interlocutory review of the trial court's order denying their motion for class certification in this tobacco products litigation brought under the Unlawful Trade Practices Act (UTPA). We write to address the operation of the class action interlocutory appeal statute, ORS 19.225, which provides:

> "When a circuit court judge, in making in a class action under ORCP 32 an order not otherwise appealable, is of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, the judge shall so state in writing in such order. *The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order* to the Court of Appeals if application is made to the court within 10 days after the entry of the order. Application for such an appeal shall not stay proceedings in the circuit court unless the circuit court judge or the Court of Appeals or a judge thereof shall so order."

(Emphasis added.) Below, we explain the factors that we consider in determining whether to permit an interlocutory appeal under ORS 19.225. We then apply those factors to this case and, in light of that analysis, conclude by denying plaintiffs' application for an interlocutory appeal.

■ How the legislature intended that we exercise our discretion in determining whether to allow interlocutory appeals in class actions presents a question of statutory construction that we analyze by applying the template set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). The text alone, under which, assuming that other prerequisites are met, the court is to permit an appeal "in its discretion" is not particularly illuminating. The ordinary meaning of "discretion" is "power of decision : individual judgment * * * power of free decision or choice within certain legal bounds * * *." *Webster's Third New Int'l Dictionary* 647 (unabridged ed 2002). That is also the accepted legal meaning of the term. *See State v. Rogers,* 330 Or 282, 312, 4 P3d 1261 (2000) (describing discretion as the

authority to select from a range of legally acceptable options). Thus, a conferral of discretion is elastic, but not without limits. It is possible that the legislature intended for courts to set those limits based on criteria that the courts, themselves, develop. On the other hand, it is also possible that the legislature intended to circumscribe or cabin that discretion in a different way. Because the text and context of the provision do not reveal what limitations, if any, the legislature intended to apply to the court's exercise of its discretion, we turn to legislative history.

The provision that eventually became ORS 19.225 was enacted in 1973 as part of Senate Bill (SB) 163, a bill that created procedures for litigating class actions in Oregon. Or Laws 1973, ch 349, § 22.[1] SB 163 was modeled on Federal Rule of Civil Procedure (FRCP) 23, the federal class action provision. Minutes, Senate Committee on Judiciary, SB 163, Apr 11, 1973, 3 (statement of Laird Kirkpatrick); Minutes, Senate Committee on Consumer and Business Affairs, SB 163, Feb 13, 1973, 2 (statement of Ron Loew). SB 163 did not initially contain an interlocutory appeal provision; rather, that provision was added as part of a set of "agreed-upon" amendments. It was derived from the general federal interlocutory appeal statute, 28 USC section 1292(b). Tape Recording, Senate Committee on Judiciary, SB 163, May 9, 1973, Tape 30, Side 1 (statement of Preston O'Leary).[2]

Because ORS 19.225 is modeled on 28 USC section 1292(b), we assume that the legislature intended to incorporate interpretations of that provision existing at the time that the Oregon statute was enacted. *See Southern Pacific v.*

---

[1] The provision was originally codified as ORS 13.400; it then was renumbered as ORS 19.015, and in 1997, it was renumbered as ORS 19.225. The provision has not been materially amended since its inception.

[2] In 1973, when the bill that would become ORS 19.225 was being considered, FRCP 23 did not include a provision for interlocutory appeals of decisions granting or denying class certification. In 1998, however, such a provision was enacted as FRCP 23(f), which now provides:

"A court of appeals may in its discretion permit an appeal from an order of a district court granting or denying class action certification under this rule if application is made to it within ten days after entry of the order. An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders."

*Bryson*, 254 Or 478, 480, 459 P2d 881 (1969) (stating principle); *Waybrant v. Clackamas County*, 54 Or App 740, 744, 635 P2d 1365 (1981) ("Although there are as yet no Oregon cases interpreting ORCP 23 C, there is precedent in federal cases interpreting Rule 15(c) of the Federal Rules of Civil Procedure, which is virtually identical to ORCP 23 C." (footnote omitted)). We turn, then, to 28 USC section 1292(b), its legislative history, and the cases interpreting it before 1973.

28 USC section 1292(b) provides:

"When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however*, that application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order."

(Italics in original.) The legislative history of the federal provision suggests two points relevant to our inquiry. First, Congress intended for the federal courts of appeal to have very broad discretion in determining whether to allow interlocutory appeals:

"The granting of the appeal is * * * discretionary with the Court of Appeals[,] which may refuse to entertain such an appeal in much the same manner that the Supreme Court today refuses to entertain application for writs of certiorari.

"[Denial of the application for interlocutory appeal] could be based upon a view that the question involved was not a controlling issue. It could be denied on the basis that the docket of the circuit court of appeals was such that the appeal could not be entertained for too long a period of time.

But, whatever the reason, the ultimate determination concerning the right of appeal is within the discretion of the judges of the appropriate circuit court of appeals."

S Rep No 85-2434, 85th Cong, 2d Sess, *reprinted in* 1958 USCCAN 5255, 5257. Second, "the appeal from interlocutory orders thus provided should and will be used only in exceptional cases where a decision of the appeal may avoid protracted and expensive litigation * * *." *Id.* at 5259.[3]

Decisions from the federal courts of appeal—before 1973, when the Oregon legislature adopted the provision— also shed some light on the meaning of the federal provision. Shortly after its enactment, a number of courts held that the determinations required of the trial court—that is, (1) that the order involves a controlling question of law (2) as to which there is substantial ground for difference of opinion and (3) that an immediate appeal from the order may materially advance the ultimate termination of the litigation—are not merely to be "rubber stamped" by the appellate court. Rather, the appellate court must independently address those questions. *See, e.g., United States v. Woodbury*, 263 F2d 784, 786 (9th Cir 1959) ("The opinion of the district judge that a controlling question is involved, while deserving of careful consideration, is not binding upon this court when we are called upon to exercise our discretion under the statute. We accordingly reexamine that point."); *In re Heddendorf*, 263 F2d 887, 888-89 (1st Cir 1959) ("Although the statute does not expressly lay down standards to guide the court of appeals in its exercise of judicial 'discretion,' it would seem that the appellate court should at least concur with the district court in the opinion that the proposed appeal presents a difficult central question of law which is not settled by controlling authority, and that a prompt decision by the appellate court at this advanced stage would serve the cause of justice by accelerating 'the ultimate termination of the litigation.' "); *Milbert v. Bison Laboratories*, 260 F2d 431, 433 (3d Cir 1958)

---

[3] That statement comes from a report quoted in a letter from the Judicial Conference of the United States that accompanied the transmittal of the legislative proposal to the Senate Judiciary Committee. The report, from a committee of the conference appointed to study the matter, also stated that the provision should apply only to orders "in those exceptional cases where it is desirable that this be done to avoid unnecessary delay and expenses * * *." 1958 USCCAN at 5260.

("To begin with, before an appeal can be had, the district court must certify in writing that the order involves a controlling question of law and that an immediate appeal may materially advance the ultimate determination of the case. In addition, the court of appeals must be of the same opinion before the appeal can be had."). Thus, by 1973, section 1292(b) had been interpreted to require the appellate court to reevaluate the conclusions underlying the trial court's decision to certify the appeal.

The federal courts also generally adopted the view expressed in the legislative history that the provision should not be routinely used to allow interlocutory appeals:

> "It is quite apparent from the legislative history of [section 1292(b)] that Congress intended that section 1292(b) should be sparingly applied. It is to be used only in exceptional cases where an intermediate appeal may avoid protracted and expensive litigation and is not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation. Both the district judge and the court of appeals are to exercise independent judgment in each case and are not to act routinely."

*Milbert*, 260 F2d at 433.[4]

Second, once the appellate court has determined that it agrees with the trial court's conclusions, it still must decide whether to allow the appeal. Again, federal courts of appeal tried to provide some guidance on that front. But, other than the broad discretion referred to in the Senate Report, courts had difficulty articulating meaningful standards to cabin their discretion. One treatise suggests that the discretion should be guided by the same considerations as the statute requires of the trial court. "[T]he statutory criteria that control the district court inform court of appeals action not only in determining whether the district court had authority to certify an appeal, but also in guiding the discretionary decision whether to accept a properly certified appeal, influenced in part by respect for the district court's

---

[4] *But see* Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, 16 *Federal Practice and Procedure* § 3929, 368 (2d ed 1996 & Supp 2006) ("[E]ven a casual survey of the hundreds of appeals decided under § 1292(b) suggests that it is often used in cases that do not meet the 'exceptional' test.").

determination." Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, 16 *Federal Practice and Procedure* § 3929, 380 (2d ed 1996 & Supp 2006). Perhaps the best guidance comes from an early decision from the Fifth Circuit:

> "[Section 1292(b)] was a judge-sought, judge-made, judge-sponsored enactment. Federal Judges from their prior professional practice, and more so from experience gained in the adjudication of today's complex litigation, were acutely aware of two principal things. First, certainty and dispatch in the completion of judicial business makes piecemeal appeal as permitted in some states undesirable. But second, there are occasions which defy precise delineation or description in which as a practical matter orderly administration is frustrated by the necessity of a waste of precious judicial time while the case grinds through to a final judgment as the sole medium through which to test the correctness of some isolated identifiable point of fact, of law, of substance or procedure, upon which in a realistic way the whole case or defense will turn. The amendment was to give to the appellate machinery of [28 USC] § 1291 through § 1294 a considerable flexibility operating under the immediate, sole and broad control of Judges so that within reasonable limits disadvantages of piecemeal and final judgment appeals might both be avoided. It is that general approach rather than the use of handy modifiers— which may turn out to be Shibboleths—that should guide us in its application and in determining whether the procedure specified has been substantially satisfied."

*Hadjipateras v. Pacifica, S.A.*, 290 F2d 697, 702-03 (5th Cir 1961).

To summarize, by 1973, when section 1292(b) was copied into Senate Bill 163, it had been interpreted to include the following features:

- The appellate courts were to independently analyze the statutory prerequisites to interlocutory appeal that had been considered by the trial court.

- The appellate courts had very broad discretion in deciding whether to allow an interlocutory appeal, including the power to consider matters unrelated to the merits of the appeal (such as the court's docket).[5]

---

[5] Moreover, Congress did not intend to require that appellate courts state their reasons for allowing or denying interlocutory appeals under this provision. *See*

- Congress intended that, in exercising their discretion, appellate courts might act in a manner similar to the way in which the Supreme Court acts in exercising its *certiorari* discretion.

- Section 1292(b) was to be reserved for exceptional cases and not to be routinely employed.

- Appellate courts were to exercise their discretion in a manner consistent with the goals of the provision, *viz.*, to promote judicial efficiency.[6]

Under settled principles of statutory construction, we presume that the Oregon legislature had the same intent regarding ORS 19.225.

■ In light of that understanding of ORS 19.225, we consider plaintiffs' application for interlocutory appeal of the trial court's order denying class certification. Plaintiffs filed a complaint under the UTPA, ORS 646.605 to 646.656, alleging that defendants' use of the term "lights" in their "Marlboro Lights" cigarettes and the statement "lowered tar and nicotine" on the package are unlawful trade practices. According to plaintiffs, defendants have made false representations, in violation of the UTPA, because, as the trial court summarized the gravamen of the complaint,

> "they do not disclose that the lower tar and nicotine yield are based on machine measurements that are not similar to the way a human being smokes and they do not disclose that Marlboro Lights are not *inherently* lower in tar and nicotine than Marlboro Regulars because very easy, simple and even unconscious compensation or titration on the part of the smoker will cause as much tar and nicotine to be ingested by the smoker as if he or she were smoking Marlboro Regulars."[7]

---

*Woodbury*, 263 F2d at 788 ("Under section 1292(b) it is not required that we express our reasons for granting or denying an application for permission to take an interlocutory appeal. We have done so here because the statute is new and some decisional guidance at the outset may be helpful." (footnote omitted)).

[6] *See Note, Interlocutory Appeals in the Federal Courts Under 28 U.S.C. § 1292(b)*, 88 Harv L Rev 607, 611 (1975) ("The language chosen by the draftsmen— in particular the requirement that an interlocutory appeal 'materially advance the termination of the litigation'—together with the emphasis in the Conference's deliberations on the trial judge's special ability to assess the future course of litigation and, therefore, the efficiency of allowing an immediate appeal, corroborate that the exclusive goal of section 1292(b) was greater judicial efficiency.").

[7] For further discussion of compensation and titration, see *Estate of Michelle Schwarz v. Philip Morris Inc.*, 206 Or App 20, 32-35, 135 P3d 409 (2006).

(Emphasis in original.)

Plaintiffs moved to certify a class consisting of all purchasers of Marlboro Lights cigarettes in Oregon. Plaintiffs also moved, in the alternative, for an order certifying a class of all Marlboro Lights purchasers in Oregon as to common issues. Following a hearing and a lengthy and detailed opinion examining all the statutory factors relating to class certification, the trial court concluded that it would not certify the class:

> "In considering all of the factors, I conclude that a class action, either for the entire case or for any specific issues would not be superior to individual actions for adjudication of the controversy. In my view the scales are tipped by the fact that not only do the individual issues predominate over the common ones, they do so overwhelmingly.

> "My conclusions concerning the requirement that plaintiffs prove causation and reliance, and my conclusion about the need to prove an 'ascertainable loss' are separate and independent grounds for finding that individual questions predominate. In other words, I would reach the conclusion that individual questions predominate over common questions (to a degree that requires denial of class certification) even if my finding on one of those issues were found on appeal to be wrong.

> "The motion and alternative motions for class certification are denied."

Pursuant to plaintiffs' request that it certify the order for interlocutory appeal, the trial court stated in its order that the order "involves controlling questions of law as to which there is substantial ground for difference of opinion and that an immediate appeal from this order may materially advance the ultimate termination of the litigation." The court certified eight questions to this court.[8] Because, for the

---

[8] Those questions are:

"1.  Did the trial court err in denying plaintiffs' motions for class certification?

"2.  Given the nature of the misrepresentation alleged by plaintiffs, must plaintiffs prove reliance on the alleged deception?

"3.  If plaintiffs are required to prove reliance in this case, does the law permit them to do so on a class-wide basis through the use of expert testimony and statistical or survey evidence?

reasons explained below, we deny plaintiffs' request for an interlocutory appeal, we do not reach the questions that the trial court posed.

As noted, plaintiffs seek an interlocutory appeal of the order denying class certification. *See* ORAP 10.05 (governing procedure). They argue that, under the trial court's interpretation of the UTPA underlying its order, it may be impossible for an individual plaintiff to establish a claim against defendants. They further argue that the trial court's interpretation of ORCP 32, the class action provision, "creates new procedures that lead to determinations of the merits of the underlying proof at the certification stage." According to plaintiffs, the trial court's interpretation of the UTPA requirement that a plaintiff prove an "ascertainable loss" is incorrect and creates an unsurmountable obstacle to recovery under the UTPA. Plaintiffs also assert that the trial court's conclusion that plaintiffs must show reliance on the alleged misrepresentation in order to recover is incorrect. Finally, plaintiffs claim that the trial court "engrafted a new requirement" onto class action certification motions in that the trial court's requirement would force plaintiffs to address the merits of their claim at the class certification stage. Plaintiffs conclude that, under the trial court's interpretation of various requirements of the UTPA in the context of class

"4.  If the answer to question #3 is 'yes,' were plaintiffs required to adduce specific evidence of class-wide reliance at the class certification stage, or should the court have made its findings and conclusions based on the representations of counsel as to the anticipated proof?

"5.  Must plaintiffs prove that they failed to receive less tar and nicotine (on a per cigarette basis) when smoking Marlboro Lights than they would have received if smoking regular Marlboro cigarettes in order to establish that they suffered an 'ascertainable loss of money or property'?

"6.  Given the nature of the product at issue in this case, may plaintiffs establish 'ascertainable loss of money or property' and the value of the loss through expert testimony and statistical or survey evidence?

"7.  If the answer to question #6 is 'yes,' were plaintiffs required to adduce specific evidence of class-wide loss at the class certification stage, or should the court have made its findings and conclusions based on the representations of counsel as to the anticipated proof?

"8.  Did the trial court err in concluding that causation, reliance and ascertainable loss, or any one of those issues, required individual proof and that individual issues predominate such that plaintiffs' proposed class action would be unmanageable?"

actions, they essentially cannot prevail—either as a class or as individuals.

Defendants disagree. They assert that the class plaintiffs seek to certify would comprise millions of consumers throughout the world and would be the largest class ever certified in Oregon. Defendants make two arguments against permitting an interlocutory appeal. First, they say, the trial court's legal conclusions are correct. Second, and in any event, defendants urge that the court "deny interlocutory review as a matter of case management." This case, defendants maintain, is likely to be resolved on summary judgment and appeal now would not contribute to an efficient process:

> "Absent interlocutory appeal, it is likely that this case will soon be reduced to final judgment, allowing plaintiffs to take a plenary appeal. At the very least, the Court will have another opportunity to consider interlocutory appeal after the legal viability of plaintiffs' claim is determined by the trial court. Allowing piecemeal review now would not be an efficient use of judicial resources."

In evaluating plaintiffs' application for interlocutory appeal, we begin, as noted, with the three prerequisites to interlocutory appeal under ORS 19.225. First, we agree with the trial court that its order involves controlling issues of law. To be "controlling" for purposes of ORS 19.225, the legal issue need not be dispositive of the litigation. *See Woodbury*, 263 F2d at 787 ("[W]e do not hold that a question brought here on interlocutory appeal must be dispositive of the lawsuit in order to be regarded as controlling."). Whether a plaintiff must prove reliance under the UTPA (in the context of the allegations here), whether the trial court's analysis of the nature of the damages that plaintiffs must prove, and whether—in light of those issues and other considerations—the trial court erred in refusing to certify a class, are controlling issues. That is, although not definitely dispositive, they will have a significant effect on the outcome of the litigation.

Similarly, we agree with the trial court that there is substantial ground for difference of opinion regarding the issues underlying the challenged order. We emphasize that the second prerequisite to interlocutory appeal under ORS

19.225 does not require that we believe the trial court to have erred in its legal conclusions. Rather, the order need only present issues about which reasonable appellate jurists could disagree. *See Note, Interlocutory Appeals in the Federal Courts Under 28 USC section 1292(b)*, 88 Harv L Rev 607, 624 (1975) ("[A] standard consistent with the policy underlying this criterion would require a trial court to believe that a reasonable appellate judge could vote for reversal of the challenged order.").

The third prerequisite to the exercise of our discretion to permit an interlocutory appeal—whether an immediate appeal from the order may materially advance the ultimate termination of the litigation—is inextricably intertwined with the ultimate exercise of our discretion. As in other jurisdictions, the general policy in this state is to disfavor piecemeal appeals. *See, e.g., David M. Scott Construction v. Farrell*, 285 Or 563, 567, 592 P2d 551 (1979) ("As a matter of general policy, this court has disapproved the practice of piece-meal appeals for the reason that efficient judicial administration will be better served if a case is required to proceed to final judgment before any appeal is permitted."); *Lulay v. Earle v. Wolfer*, 278 Or 511, 514, 564 P2d 1045 (1977) ("conservation of appellate court time" supports policy disfavoring piecemeal appeals); *Shea v. Chicago Pneumatic Tool Co.*, 164 Or App 198, 204, 990 P2d 912 (1999), *rev den*, 330 Or 252 (2000) (noting "a general policy disfavoring interlocutory appeals"). That policy is consistent with the policy underlying the federal act upon which ORS 19.225 was modeled, which is to reserve the class action interlocutory appeal provision for only "exceptional" cases.

Here, we conclude that an immediate appeal is unlikely to materially advance the ultimate termination of the litigation. As defendants assert, the issues regarding interpretation of the UTPA and class certification—although important—will be before this court on appeal from a final judgment. And, because those issues primarily involve legal, not factual, questions, such a judgment may be forthcoming in the form of summary judgment or some other pretrial disposition. *See Ratner v. Chemical Bank New York Trust Company*, 309 F Supp 983, 989 (SDNY 1970) (Interlocutory appeal under section 1292(b) was not appropriate in a case

that, among other things, might be susceptible of resolution on a motion for summary judgment or like procedure for accelerated judgment.); *Seidenberg v. McSorleys' Old Ale House, Inc.*, 308 F Supp 1253, 1261 (SDNY 1969) (court denied the interlocutory appeal because "[t]he instant suit, unlike certain receivership actions, admiralty decrees, patent, anti-trust and conspiracy cases, to name a few, may prove amenable to a motion for summary judgment under" FRCP 56).

In short, plaintiffs have not demonstrated that this is an exceptional case in which immediate resolution of the legal issues presented by the trial court's refusal to certify a class will necessarily result in less expense for the parties, speedier resolution of the litigation, or more efficient use of judicial resources. For all the above reasons, we deny plaintiffs' application for interlocutory appeal.[9]

Application for interlocutory appeal denied; appeal dismissed.

---

[9] We make certain to note that, should the issues underlying the trial court's order come before this court on appeal from a final judgment in the ordinary course, nothing that we have said in this opinion regarding those legal issues is binding on the panel that considers the merits.